APPEAL OF CICHON : FEUERSTEIN, Plaintiff, vs. KALB and others, Defendants, and four other cases.

*January 13—February 15, 1938.*

For the appellant there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *W. B. Rubin* of counsel, all of Milwaukee, and oral argument by *Mr. Rubin.*

*O. A. Oestreich* of Janesville, for the respondent.

WICKHEM, J. Defendant Cichon was found guilty of contempt of court. The order recites that certain persons having appeared before the court, and having in open court

and in sight and presence of the court retained defendant to appear for them in the proceedings, and Cichon having accepted this commission in the immediate view and presence of the court, although conceding that he had never been admitted to the bar, that defendant then and there violated sec. 256.30, Stats., by so appearing and requesting of the court relief for others than himself; and that this constituted contempt of court, requiring summary punishment. The facts of the case are fairly simple but, by reason of the rather irregular nature of the proceedings, require some exposition.

Kalb, Heidenreich, Schuldt, Cichon, and Ells are farmers who, previous to the case in question, had lost their farms and homesteads by foreclosure; the proceedings being fully complete, the premises having been sold, and they having been evicted. Thereafter, on March 29, 1937, the supreme court of the United States in *Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, Va.,* 300 U. S. 440, 57 Sup. Ct. 556, held valid the new Frazier-Lemke Farm Act, and the persons in question, evidently acting without legal advice, supposed that this act offered possibilities of relief to them in recovering their homes. On April 1st they addressed a petition signed by each of them and addressed to the Hon. Roscoe R. Luce, judge of the county court of Walworth county. The petition read as follows:

"To the Honorable Roscoe R. Luce, Judge of the County Court of Walworth County, State of Wisconsin:

"We, the undersigned, long since evicted from and deprived of, our homes and farms in defiance to and in violation of the law, 'The Frazier-Lemke Farm Moratorium Act,' as of August 24, 1935, and as the supreme court of the United States, unanimously, declared, held and affirmed, said law to be constitutional and of effect.

"We hereby respectfully petition the county court of Walworth county, state of Wisconsin, to consent that our petitions for the return of our homes and farms be filed with

this court and that a time and day be specified for the hearing of the same.

"ERNEST KALB
"WILLIAM HEIDENREICH
"AUGUST SCHULDT
"MAX CICHON
[Seal]                              "FRED ELLS."

The matter, and we use "matter" advisedly because it is a little difficult to determine just what the proceeding was, was set for a hearing on April 1, 1937, and on that occasion the court questioned defendant Cichon at once as to his status in relation to the other petitioners. He stated:

"Mr. Cichon, I take it in appearing here that you are appearing to represent Mr. Kalb, Mr. Heidenreich, Mr. Schuldt, and Mr. Ells in addition to representing yourself; is that correct?"

Mr. Cichon answered:

"It may be such, although there is a discrepancy in existence due to the fact they are planning a return under the last paragraph of our petition for a return of our farms and property and that a time and day be specified for the hearing of the same."

Upon the court requesting by what authority Cichon appeared for the other petitioners in a court of record, Cichon replied that he appeared solely for himself under his constitutional right to do so. He was asked whether he purported to represent the parties in court and answered:

"I represent myself."

The court stated that that was perfectly proper, and then asked him whether he purported to represent the other petitioners by virtue of any constitutional provision, and defendant answered:

"If they wish to give me their verbal power of attorney I desire so if they so declare."

The court then questioned each of the other petitioners as to whether "you are authorizing Mr. Cichon to appear here as the agent of your choice?" Each answered in the affirmative. The court then stated:

"And under those circumstances you are appearing for these gentlemen as the agent of their choice? *A.* Under these circumstances I feel honored and accept their commission.

"*Q.* You have not been admitted to the bar and are not licensed to practice? *A.* I know the law and I don't practice it.

"*Q.* You have no certificate of admission to the bar in this state? *A.* Quite so."

The court then stated to the clerk:

"Mr. Pramer, Mr. Cichon has entered his appearance here in this court, which is a court of record, after being repeatedly informed and admonished by the court that the constitution contains no authorization for such appearance, and the court here now finds and adjudges that Max Cichon is in contempt of this court and now here directs that he be taken into custody for his contempt before it and that he be imprisoned in the common jail of Walworth county for the period of thirty days from this date."

Defendant contends that there was nothing pending before the court, and that defendant's conduct could not be a contempt under those circumstances; that the court had no jurisdiction to give any relief, the foreclosure proceedings being closed, the land sold, and the sales confirmed; that a judge may not turn a communication made personally to him into a proceeding in court and thereby make applicable rules relative to contempt in judicial proceedings.

We do not find it necessary to consider whether under the circumstances there was a proceeding or matter before the court in which a contempt could be committed. We shall assume, without deciding the matter, that there was. We pro-

ceed to consider whether defendant's conduct was such as to warrant the trial court in adjudging him guilty of contempt of court. Our examination of this question may well begin with sec. 256.30 (1) and (2), Stats., which reads as follows:

"(1) Every person, who without having first obtained a license to practice law as an attorney of a court of record of Wisconsin, as provided by law, shall practice law within the meaning of subsection (2) of this section, or hold himself out as licensed to practice law as an attorney within the meaning of subsection (3) of this section, shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than fifty nor more than five hundred dollars or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment, in addition to his liability to be punished as for a contempt.

"(2) Every person who shall appear as agent, representative or attorney, for or on behalf of any other person, or any firm, copartnership, association or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, or who shall otherwise, in or out of court for compensation or pecuniary reward give professional legal advice not incidental to his usual or ordinary business, or render any legal service for any other person, . . . shall be deemed to be practicing law within the meaning of this section."

It is evident that sec. 256.30 (1), Stats., does not purport to define contempt of court or to confer upon courts any new powers with respect to the subject of contempt. It is simply made plain that one who violates the provisions of the section shall be liable to fine or imprisonment in addition to whatever liability he may sustain for contempt of court. The scope of that liability is undefined, and we think the omission was deliberate on the part of the legislature. The power to punish for contempt of court exists independently of statute for the reason that it is a necessary incident to the exercise of judicial power and is reasonably to be implied

from the grant of such power. *Cooley v. United States* (8th Cir.), 59 Fed. (2d) 929; *State v. Brodson,* 163 La. 94, 111 So. 611; *State v. District Court of Tenth Judicial District,* 92 Mont. 94, 10 Pac. (2d) 586.

The scope of the liability for contempt being undefined, it must follow that whether in a given case a violation of the statutory provisions with respect to practicing law without a license shall constitute contempt must depend upon general rules applicable to contempts. It cannot be that every slight, isolated, technical, and unintended violation of the section constitutes a contempt of court. The power to punish for contempt is drastic and extraordinary, and exists for the purpose of enabling a court to enforce the fair and orderly administration of justice, and to maintain such dignity and discipline as is essential to that end. With reference to conduct in the presence of the court, it permits the court to punish acts which tend to subvert, embarrass, or prevent justice, or which evidence contempt for the authority of the court. A mere recital of the purposes for which the power is exercised indicates that it is directed against substantial and not against trivial offenses; and the drastic nature of the power requires that it be not exercised upon light occasion. Such contempts as may arise in connection with the unauthorized practice of the law must be judged in the light of the ends sought to be accomplished by regulation of the legal profession. In addition to insuring so far as possible that attorneys have high personal and professional character, these are principally to insure that those who appear in court for others shall understand their duties to the court and be capable of discharging them competently, and that those who hold themselves out as legal advisors and as attorneys shall have the competency which they profess to have, to the end that those requiring legal advice or legal services may not be misled and defrauded by incompetents. Thus, one who holds

himself out to the public as a lawyer when in fact he is not licensed ordinarily commits a substantial offense and is guilty of an imposition upon the courts and the public whose patronage he solicits by his holding out. So also the unqualified person who appears in court as attorney for another may and usually does impose upon the court and the party whom he purports to represent. It does not follow, however, that in every such case a trial court would be warranted in inflicting a punishment for contempt. While ignorance of the law excuses no person, it is quite evident that there may be situations in which the violation is trivial, technical, and wholly unintended. In such a case there is no such affront to the dignity and authority of the court as to warrant punishment for contempt. In the light of the foregoing principles, we proceed to a consideration of the facts as disclosed by the record.

So far as the evidence discloses, defendant, being one of the signers of the petition, was properly in court exercising his constitutional privilege of self-representation. He made it sufficiently clear in answers to inquiries by the trial court that he was representing himself only. After the court had asked him if he purported to represent the other petitioners, he merely expressed a willingness to do so if that was their desire. This is further evidence that up to that time, at least, he did not purport to represent them and was not appearing for them. When inquiries by the court to the other petitioners disclosed their wish that he act as their agent, he then indicated his willingness so to act. In this connection the record is most strongly open to the inference that defendant considered that since all the parties including defendant were copetitioners, and since one could hardly speak for himself without speaking for his fellow petitioners, it was agreeable to the court that he be the spokesman if this was consented to by the other petitioners. In this connection it is to be noted

that the word "attorney" was not used by the court in the course of its inquiries, but rather the word "agent," which, while it may have substantially the meaning of "attorney" when its constitutional and legislative history is fully considered, very likely would not mean the same to an ordinary layman. Almost in the same breath with his statement of willingness to act as agent for his copetitioners, defendant expressly and openly disclaimed any standing as a lawyer and any purpose to practice law. He never claimed, so far as the record discloses, that he had any constitutional privilege to appear for anybody but himself in the proceedings. He evidently was quite uncertain whether the instant proceeding was a hearing or a trial on the one hand, or merely a preliminary conference to set a time and place for some sort of trial upon the merits of the petition. At an early stage of the proceedings in response to the question whether he represented his copetitioners, he answered,

"It may be such, although there is a discrepancy in existence due to the fact they are planning a return under the last paragraph of our petition for a return of our farms and property and that a time and day be specified for the hearing of the same."

While this statement is treated in the briefs as a sonorous and meaningless jumble of words which might quite easily proceed from the mouth of one who thought himself something of a lawyer but in fact was not, it seems plain that defendant had in mind that the parties were in court merely to set the date for a hearing at some future time, and that he was, as he well may have been, quite mystified as to the character of the present proceedings. We have searched the record in vain for evidence that defendant's conduct was contumacious or that it shows any intention to violate the law or any understanding that he had done so. Nor is it at all clear to us that the defendant even comprehended that he was mak-

ing or had made an appearance for others in a judicial proceeding. The record is rather consistent with the conclusion that defendant thought he was accommodating the court and his copetitioners in a merely preliminary stage of the proceedings by acting as spokesman for those whose names were on the petition with him. There is no evidence that defendant's manner was insolent or showed a want of respect for the court.

It is suggested that the record presents a case of entrapment of defendant by the trial court. We discover no evidence that such a purpose actuated the inquiries of the trial court, and a knowledge of the high character and sound judgment of the trial judge would make such a conclusion difficult to accept. It may well be, as suggested in respondent's brief, that defendant was not the innocent and ignorant layman that he purports to be, and that the trial court had a background of experience with him in other cases which might have justified conclusions which the record does not sustain. We content ourselves with the statement that the record as presented to this court shows no conduct on the part of defendant which justified the discipline imposed by the court, and this court is compelled to decide cases upon the record.

In view of the foregoing conclusions the order must be reversed and defendant discharged.

*By the Court.*—Order reversed, and cause remanded with directions to vacate the order of commitment and to discharge the defendant.