IN RE the PATERNITY OF D.A.A.P.: STATE of Wisconsin,
Petitioner-Respondent,

V.

A.W.O., Respondent-Appellant.†

Court of Appeals

*No. 83–051. Submitted on briefs December 8, 1983.—
Decided December 27, 1983.*
(Also reported in 344 N.W.2d 200.)

† Petition to review denied.

For the respondent-appellant, the cause was submitted on the briefs of *Schoone, McManus, Hankel & Ware, S.C.,* attorneys, and *Kent A. Tess-Mattner,* of counsel, of Racine.

For the petitioner-respondent, the cause was submitted on the brief of *Lynn M. Bureta,* Assistant Corporation Counsel, of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. A.W.O, appeals from an order holding him in contempt for refusing to take a court-ordered HLA blood test under sec. 767.46 (4), Stats. The primary issue before us is whether a trial court has the authority to find a party in civil contempt for refusing to submit to a blood test.[1] We hold that it does.

On April 3, 1981, W.S.P. filed a paternity complaint alleging that A.W.O. was the father of her child, D.A.A.P. A.W.O. denied paternity, and a pretrial hearing was held before a Kenosha county court commissioner on July 30, 1981. The State requested the administration of blood tests. When A.W.O. objected to blood testing, the commissioner received testimony from W.S.P. on the probability of paternity. Based on this testimony, the commissioner found that a prima facie case for paternity

---

[1] We certified this issue to the supreme court, but certification was denied.

was established and ordered blood tests of W.S.P., A.W.O. and D.A.A.P.

Upon motion of A.W.O., the circuit court stayed the order for blood tests to permit completion of discovery. Subsequent to discovery, the court reinstated the order for blood tests finding that because the State had established a prima facie case for paternity under sec. 767.46 (2), Stats., the commissioner's order for blood tests was justified. A.W.O., however, refused to submit to the blood test. Upon motion of the State, the court found A.W.O. in contempt and ordered that he submit to the blood test or spend ten days in the county jail.[2]

On appeal, A.W.O. challenges the finding of contempt arguing (1) that because the trial court had not made a sufficient determination of probability of paternity as required by sec. 767.46(2), Stats., the order for the blood test, itself, was unsupported and improper,[3] and (2) that contempt is not an appropriate sanction for refusal to take a blood test because it is not authorized by statute and because it works a contravention of constitutional rights. Because the commissioner and the circuit court did make an adequate determination as to the probability of paternity, we conclude that the order for blood testing was lawful. Relying on a court's inherent power to enforce its orders and the provisions of ch. 785, Stats., we hold the finding of contempt for refusing to submit to the lawfully ordered blood test was proper. Finally, after

---

[2] We granted A.W.O.'s petition for leave to appeal, pursuant to sec. 808.03(2), Stats., and stayed the contempt order pending resolution of the appeal, pursuant to sec. 808.07.

[3] The State argues that A.W.O. cannot raise this argument on appeal because it was not properly brought first at the trial court level. However, review of the record indicates that A.W.O. contested the propriety of ordering the blood test at the pretrial hearing and before the circuit court.

balancing the State's interest in determining paternity against the privacy interest of a putative father, we hold that the order for the blood test and the finding of contempt for refusing to submit to the test does not contravene A.W.O.'s constitutional rights to due process and privacy.

Pursuant to the procedure for determining paternity, any party may request blood testing. Secs. 767.456(4) and 767.48(1), Stats. A court may order the alleged father to submit to a blood test only after determining at a pretrial hearing, pursuant to sec. 767.46(2), that there is a probability that paternity can be established at trial and that a determination of paternity is in the best interests of the child. *State ex rel. Scott v. Slocum,* 109 Wis. 2d 397, 398, 326 N.W.2d 118, 119 (Ct. App. 1982).

A.W.O. argues that the court commissioner's and circuit court's finding of a prima facie case at the pretrial hearing does not fulfill the requirements of sec. 767.46(2), Stats., as outlined by *Slocum,* and, therefore, the order for blood testing was unlawful. We disagree. Although the court's finding at the pretrial hearing would be better stated if it more closely reflected the statutory language, a reading of the record and the circuit court's written decision indicates that the requirements of sec. 767.46(2) were met. We make a commonsense determination that the term "prima facie" as used by the commissioner and the circuit court means probability of paternity. This conclusion is supported by the circuit court's written decision, which specifically refers to the language of sec. 767.46(2) when discussing the prima facie finding at the pretrial hearing.

A.W.O. also contends that the prima facie finding is, itself, insufficient because it did not meet the elements of a prima facie case set out in *State ex rel. Skowronski*

*v. Mjelde,* 112 Wis. 2d 110, 115, 332 N.W.2d 289, 291–92 (1983). The elements of a prima facie case, outlined in *Skowronski,* refer to the amount of evidence necessary to entitle the State to a finding of paternity at trial by the clear and satisfactory preponderance of the evidence. In contrast, the sufficiency of the evidence to support an order for blood tests under sec. 767.46(2), Stats., is cast in terms of probability. A.W.O.'s reliance on *Skowronski* is misplaced.

In this case, the circuit court determined that it had authority under sec. 767.47(5), Stats.,[4] to find A.W.O. in contempt for refusing to submit to the ordered blood tests. On appeal, A.W.O. argues that constitutional considerations and proper statutory construction of the provisions of ch. 767 prevent the trial court from exercising its contempt powers to enforce the order for blood testing. Specifically, A.W.O. contends that the sanctions provided under secs. 767.48(4) and 767.47(3)[5] are exclusive and preclude a finding of contempt for refusal to submit to a blood test. He argues that allowing the

[4] Section 767.47(5), Stats., reads in relevant part: "The refusal of a witness . . . to obey an order to testify or produce evidence is a civil contempt of the court."

We do not reach the question of whether this provision, by itself, authorizes a finding of contempt since we find such an order is authorized by ch. 785, Stats., and the court's inherent power to enforce its orders.

[5] Section 767.47(3), Stats., provides:

In an action against an alleged father, evidence offered by him with respect to an identified man who is not subject to the jurisdiction of the court concerning that man's sexual intercourse with the mother at or about the presumptive time of conception of the child is admissible in evidence only after the alleged father has undergone and made available to the court blood tests as provided in s. 767.48.

Section 767.48(4) provides in relevant part:

"If any party refuses to submit to the blood test this fact shall be disclosed to the fact finder."

use of contempt to enforce the court-ordered blood test would render these sanctions superfluous and, more importantly, violate A.W.O.'s constitutional rights to due process and freedom from personal restraint.

It is well settled in this state that all courts possess an inherent power to hold in contempt those who disobey a lawful order of the court. *In re Honorable Charles E. Kading,* 70 Wis. 2d 508, 543b, 235 N.W.2d 409 (1975), *reh'g denied,* 70 Wis. 2d 543b, 238 N.W.2d 63, 63–64 (1976). This power exists as "a necessary incident to the exercise of judicial power and is reasonably to be implied from the grant of such power." *Id.* quoting *Appeal of Cichon,* 227 Wis. 62, 67–68, 278 N.W. 1, 4 (1938). The procedures for use of this power are found in ch. 785, Stats. Intentional disobedience of a lawful court order constitutes contempt of court. Sec. 785.01(1)(b). Upon such disobedience, a court is authorized under sec. 785.02 to impose punitive or remedial sanctions as punishment for contempt of court. If a party intentionally disobeys a lawful court order, the court may imprison that party for as long as the contempt continues or six months, whichever is shorter. Sec. 785.04(1)(b).

Relying on the relevant provisions of ch. 785, Stats., and the contempt power inherent in all courts, we conclude the trial court's finding that A.W.O. was in contempt for refusing to submit to the ordered blood test was proper. It is undisputed that A.W.O. intentionally refused to comply with the court order for blood testing. Given this fact and our determination that the order requiring blood testing was lawful, a finding of contempt and the resulting remedial punishment were within the court's power.

A.W.O. argues that the legislature intended the sanctions in ch. 767, Stats., to be the exclusive sanctions for refusal to take the HLA blood test. While this court

agrees with A.W.O. that statutes are to be construed and harmonized so as to give each full force and effect, *Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815, 820 (1979), we do not agree that the availability of the contempt power for refusing to submit to lawfully ordered blood testing necessarily renders the sanctions specified under secs. 767.47(3) and 767.48(4) superfluous. We construe and harmonize the contempt powers under ch. 785, Stats., and these other provisions by holding that the sanctions specified under secs. 767.47(3) and 767.48(4) are available in addition to a court's power to find a party in contempt.

A court's power to hold in contempt, although inherent, is discretionary. Upon refusal of a party to submit to a court-ordered blood test, a court may in the exercise of its discretion hold the party in contempt; it may also decline to do so. Regardless of the court's finding of contempt, the sanctions set out under secs. 767.47(3) and 767.48(4), Stats., continue to apply in the event that the putative father refuses to take the test.

We also do not see, as A.W.O. contends in his brief, how a finding of contempt would necessarily "trammel the due process expectation rights created by secs. 767.48 (4) and 767.47(3), whereby an alleged father is informed of the consequences of refusing to comply with an order that he submit to blood testing." A.W.O. provides no reason why a due process right to be informed of available sanctions, arguably created by these provisions, would of necessity be contravened by the availability of contempt as an additional sanction. Contempt is a separate and distinct option available to the court. A.W.O. was informed of the consequences of refusing to comply with the court order and was afforded an opportunity to purge himself of the contempt prior to the imposition of the jail sanction.

Finally, we reject A.W.O.'s argument that a court's power to hold a party in contempt for refusing to submit to a blood test violates his constitutional right to be free from personal restraint. Our holding that contempt lies to enforce a court order to submit to blood testing in paternity proceedings of necessity brings questions of constitutional validity into play. The drastic and effective nature of contempt as a measure to ensure compliance with an order for blood tests directly raises the central question of whether the authority to order blood tests under the paternity statutes violates, as A.W.O. implies, a putative father's right of privacy and right not to have his bodily integrity violated.

This question has not previously been raised in Wisconsin appellate courts. However, we are persuaded by the rationale and holdings of those jurisdictions where the issue has been resolved and now adopt them here. *See State v. Graham,* 318 N.W.2d 853 (Minn. 1982), and *State v. Meacham,* 612 P.2d 795 (Wash. 1980) (cases in which a statute providing for compulsory blood tests in paternity actions was upheld against constitutional challenges).

In determining this issue, we balance the State's interest in requiring the removal of blood from a putative father by means of the contempt power against the father's rights to privacy and not to have his bodily integrity violated by such a test. In making this balancing analysis, we consider certain factors, including: (1) the importance of the State's purpose in requiring the test; (2) the nature and seriousness of the intrusion; (3) whether the State's purpose justifies the intrusion, and (4) whether the means used is proper and reasonable. *Graham,* 318 N.W.2d at 855 n. 5.

Here, the State has a compelling interest in determining the paternity of children. "The public has a primary

interest in seeing that the paternity of children is accurately determined . . . in cutting welfare costs by requiring the true father to contribute to the child's support . . . in seeing that paternity actions are disposed of efficiently." *Id.*, 318 N.W.2d at 855. A blood test, which is a relatively limited form of bodily intrusion, facilitates all of these interests.

In addition, a person's right to privacy, although fundamental and personal in nature, is not absolute. The State may reasonably regulate this right in order to protect society or in support of other compelling interests. *Meacham*, 612 P.2d at 797, citing *Whalen v. Roe,* 429 U.S. 589 (1977). The blood test required is highly reliable. No other means of determining paternity that is as comparable in effectiveness is available to the State. Any pain associated with conducting the test is minimal, and any health hazard is virtually nonexistent. *Id.*

Having balanced the respective interests of the parties, we conclude that the State's compelling interests outweigh the limited privacy interest of the putative father. We hold that an order for blood testing in a paternity proceeding, enforced by means of a finding of contempt, does not violate a person's constitutional rights to due process and freedom from personal restraint.

*By the Court.*—Order affirmed.