IN RE the FINDING OF CONTEMPT IN :
IN RE the PATERNITY OF T.P.L. :
J.P.L., Petitioner-Respondent,

v.

J.H., Jr., Appellant.

Court of Appeals

*No. 83–2064. Submitted on briefs June 13, 1984.—*
*Decided July 24, 1984.*
(Also reported in 354 N.W.2d 759.)

For the appellant the cause was submitted on the briefs of *Phillip A. Arieff,* assistant state public defender, of Milwaukee.

For the petitioner-respondent the cause was submitted on the briefs of *Margaret P. Beckwith,* assistant corporation counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J. J.H., Jr. appeals from an order holding him in contempt for refusing to submit to a blood test ordered in the course of this paternity proceeding. On appeal he raises one issue: Whether the trial court had the authority to issue a contempt order for his refusal. We affirm for two reasons: The court possesses inherent authority to impose contempt and the legislature has specifically conferred the requisite authority.

The facts here are quite simple. J.H. was alleged to be the father of T.P.C. Upon request of the child's mother, the court ordered J.H. to submit to a blood test. When

he refused, the trial court found him in contempt and ordered him imprisoned for six months or until such time as he complied with the order for a blood test. The trial court stayed the term of commitment pending this appeal.

In the case of *In re Paternity of D.A.A.P.*, 117 Wis. 2d 120, 344 N.W.2d 200 (Ct. App. 1983), we decided that trial courts had the inherent authority to use the contempt sanction when a party to a paternity action refused the blood test.

J.H., however, raises an argument which was not presented to or considered by this court in *D.A.A.P.* He argues that the inherent contempt power is subject to a blood test exception applied to all actions by supreme court rule and specifically applied to paternity actions by subsequent legislation. He bases this argument on sec. 767.475(4), Stats., which requires that discovery in paternity proceedings "be conducted as provided in ch. 804 . . . ." Section 804.10(1), Stats. provides in part that "[w]hen the mental or physical condition (including the blood group) of a party is in issue, the court . . . may order the party to submit to a physical or mental examination." Section 804.12(2)(a) provides in part:

If a party . . . fails to obey an order to provide or permit discovery, including an order made under . . . s. 804.10, the court in which the action is pending may make . . . :

. . . .
4. . . . an order treating as a contempt of court the failure to obey any orders *except an order to submit to a physical or mental examination.* [Emphasis added.]

J.H. contends that these sections, by withholding the use of contempt to enforce blood test orders, force the conclusion that *D.A.A.P.* was decided erroneously. We agree that the cited provisions of ch. 804 limit the courts' inherent contempt authority in some cases, but disagree that the limitation applies to blood tests in paternity actions.

Chapter 804, Stats., was established and incorporated into Wisconsin civil procedure by supreme court order effective January 1, 1976. Wisconsin Rules of Civil Procedure 67 Wis. 2d 654 (1975). Subsequently, in 1980, the state legislature created the procedure now used in paternity cases. Ch. 352, Laws of 1979. While, as J.H. correctly notes, ch. 804 discovery procedures were incorporated into paternity actions, the legislature, by ch. 352, also created additional specific procedures to govern blood testing. These specific procedural provisions supercede ch. 804 and restore the courts' heretofore existing contempt power.

Sections 767.46(4) and 767.48(1), Stats., dictate the conditions under which the court may, or in most cases *shall*, require a party to submit to a blood test.[1] These provisions conflict in material part with sec. 804.10(1), Stats., which allows the court discretion to order a physical examination, including a blood test, and allows a party to request an examination by motion for cause shown. In contrast, secs. 767.46(4) and 767.48(1) mandate blood tests as a general rule where paternity is disputed. Section 767.48(1) mandates blood tests merely upon request of a party. Cause need not be shown. Thus, from these significant differences in procedure, we conclude that the intent of the legislature is clear and unambiguous. Its design was to impose upon the generally-

---

[1] Section 767.46(4), Stats., provides:

If a party or the guardian ad litem refuses to accept a recommendation made under this section and blood tests have not yet been taken, the court shall require the appropriate parties to submit to blood tests. After the blood tests have been taken the judge or family court commissioner shall make an appropriate final recommendation.

Section 767.48(1), Stats., provides in part:

The court may, and upon request of a party shall, require the child, mother, alleged father, or any male witness who testifies or will testify about his sexual relations with the mother at a possible time of conception to submit to blood tests.

applicable discovery procedures of ch. 804 a materially different, specific and mandatory procedure for ordering blood tests. Therefore, the prohibition on contempt in sec. 804.12(2)(a)4 does not apply. It requires only that the contempt remedy is barred for blood test orders made pursuant to sec. 804.10(1). The legislature, meanwhile, has chosen, without prohibiting the contempt remedy, to make orders for blood tests in paternity actions pursuant to secs. 767.46(4) and 767.48(1).[2] J.H. has not persuaded us to abandon the holding in *D.A.A.P.*

We find equally persuasive the language of sec. 767.47 (5), Stats., which provides:

Except as provided in sub. (6), upon refusal of any witness, including a party, to testify under oath or produce evidence, the court or family court commissioner may order the witness to testify under oath and produce evidence concerning all relevant facts. The refusal of a witness, including a witness who has immunity under sub. (4), to obey an order to testify or produce evidence is a civil contempt of the court.

We hold that this section expressly grants the contempt power to enforce blood test orders. The term "witness" explicitly includes a party, and "evidence" includes blood test results ordered pursuant to sec. 767.48 or sec. 885.23, Stats.[3] Sec. 767.47(1)(c).[4] We conclude it to be clear

---

[2] We note that a question may be raised concerning the legislature's power to regulate the scope of the courts' inherent power, especially where the supreme court has already acted in a regulating capacity to limit that authority. The supreme court has, however, consistently recognized that the legislature and judiciary share the power to regulate practice and procedure in the judicial system, subject to the separation of powers doctrine. *In re E.B.*, 111 Wis. 2d 175, 181–84, 330 N.W.2d 584, 588–89 (1983). Moreover, the supreme court has specifically acknowledged that the inherent contempt power is subject to reasonable legislative regulation. *Schroeder v. Schroeder*, 100 Wis. 2d 625, 635–36, 302 N.W.2d 475, 481 (1981).

[3] Section 885.23, Stats., provides:

and unambiguous that the legislature intended to supercede the general rule barring contempt with a statute explicitly conferring that power to enforce orders for blood tests in paternity actions.

Were the legislature's intent not clear, we would reach the same result by use of rules of statutory construction. When a general statute and a specific statute address the same subject matter and are irreconcilable, the specific statute controls, especially if it is enacted after the general statute. *State v. Dairyland Power Cooperative,* 52 Wis. 2d 45, 53, 187 N.W.2d 878, 882 (1971).

J.H. also argues that the provision for an alternate remedy in sec. 767.48(4), Stats.,[5] that refusal to submit to the blood test be disclosed to the fact finder, demonstrates an intent to preclude contempt as a remedy. This court held in *D.A.A.P.* that the sanction specified in 767.-48(4) is available in addition to the contempt power. 117 Wis. 2d at 127, 344 N.W.2d at 203.

In summary, we are not persuaded by J.H. that sec. 804.12(2)(a)4, Stats., precludes the use of contempt to

Whenever it is relevant in a civil action to determine the parentage or identity of any child, person or corpse, the court, by order, shall direct any party to the action and any person involved in the controversy to submit to one or more blood tests as provided in s. 767.48. The results of the tests shall be receivable as evidence in any case where exclusion from parentage is established or where a probability of parentage is shown to exist. Whenever the court orders the blood tests and one of the parties refuses to submit to the tests that fact shall be disclosed upon trial.

[4] Section 767.47(1), Stats., provides in part:

Evidence relating to paternity, whether given at the trial or the pretrial hearing, may include, but is not limited to:

. . . .

(c) Blood test results under ss. 767.48 and 885.23.

[5] Section 767.48(4), Stats., provides in part: "If any party refuses to submit to the blood test this fact shall be disclosed to the fact finder."

334

enforce blood test orders in paternity actions. While the legislature intended the rules of discovery in ch. 804 to apply to pretrial paternity proceedings as well as to other civil matters, provisions in ch. 767, Stats., specifically pertaining to blood tests in paternity actions disclose an intention to allow the use of contempt as a remedy.

*By the Court.*—Order affirmed.

