STATE of Wisconsin, Plaintiff-Respondent,

v.

Odell FISHER, Defendant-Appellant.†

Court of Appeals

*No. 96–1764–CR. Submitted on briefs March 27, 1997.—Decided May 7, 1997.*

(Also reported in 565 N.W.2d 565.)

†Petition to review denied.

665

666

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Winifred A. Nathan, Nathan Law Office, S.C.* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *Maureen McGlynn Flanagan,* assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J.   Odell Fisher appeals from his conviction on three counts of being a party to the crime of sexual assault of a child under the age of sixteen, §§ 939.05 and 948.02(2), STATS., 1993–94, and one count of being a party to the crime of child enticement, §§ 939.05 and 948.07(1) and (3), STATS., 1993–94. Because sexual exploitation of children is a particularly pernicious evil that cannot be concealed behind the zone of privacy, we confirm that the state unquestionably has a very compelling interest in

preventing such conduct. We hold that § 948.02(2) is constitutional and does not infringe on Fisher's privacy rights; therefore, we affirm the judgments of conviction. Further, we conclude that the trial court correctly exercised its sentencing discretion when it considered Fisher's entire course of conduct in imposing consecutive prison sentences followed by long-term probation and affirm the order denying his motion to modify his sentence.

The procedural history of this case, along with the extensive facts of the crimes of which he was convicted, are not necessary to our consideration of Fisher's challenge to the constitutionality of § 948.02(2), STATS., 1993–94.[1] The evidence that is necessary to resolve his criticism of the sentences imposed will be set forth in that portion of this opinion.

Fisher contends that the State's criminalization of consensual sexual relations with children under age sixteen violates both his constitutional privacy right to engage in sexual activity and his privacy right to make decisions regarding procreation. He has abandoned a contention he argued in the trial court that the statute was invalid because it violated a minor's right to consent to sexual relations with a person of his or her choosing.[2]

---

[1] Section 948.02(2), STATS., 1993–94, provides, "(2) SECOND DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." References to § 948.02(2) are to the 1993–94 statute.

[2] Fisher would lack standing to pursue this argument on appeal:

> [A] party has standing to raise constitutional issues only when his or her own rights are affected. He or she may not vindicate the constitutional rights of a third party. A party has standing to

Fisher bears an awesome burden in making this constitutional challenge. *See Schramek v. Bohren,* 145 Wis. 2d 695, 702, 429 N.W.2d 501, 503 (Ct. App. 1988). The law in this state presumes all legislative acts are constitutional, and in order to prevail, the challenger must prove the opposite beyond a reasonable doubt. The challenger does not meet this burden by merely establishing doubt as to the statute's constitutionality nor by establishing that the statute is probably unconstitutional. *See Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985). The constitutionality of a statute is a question of law that we review without deference to the trial court. *See Szarzynski v. YMCA,* 184 Wis. 2d 875, 883–84, 517 N.W.2d 135, 138 (1994).

Fisher objects to the statute because it absolutely bars minors from consenting to sexual relations. He acknowledges that in *State v. Kummer,* 100 Wis. 2d 220, 229–30, 301 N.W.2d 240, 245 (1981), the supreme court concluded that the consent of the minor victim, between the ages of twelve and fifteen, is neither an element of sexual assault nor a defense. However, Fisher contends that constitutionally he must be given the chance to show that the minor victim gave a knowing and voluntary consent to sexual relations.

challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action. This court adheres to this rule of standing because a court should not adjudicate constitutional rights unnecessarily and because a court should determine legal rights only when the most effective advocate of the rights, namely the party with a personal stake, is before it.

*Mast v. Olsen,* 89 Wis. 2d 12, 16, 278 N.W.2d 205, 206–07 (1979) (citations omitted).

His analysis starts with the proposition that there is a constitutional right to privacy and to matters involving procreation. He argues from *Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977), that the decision to procreate is at the center of constitutionally protected choices. He contends that it is an important element of the right to privacy that was recognized in *Griswold v. Connecticut*, 381 U.S. 479, 485–86 (1965). Using *Zablocki v. Redhail*, 434 U.S. 374 (1978), Fisher asserts that § 948.02(2), STATS., interferes with the exercise of the fundamental right to engage in consensual sexual relations and does not pass muster under the strict scrutiny test.[3] He proceeds to point out that even if the protection of minors is an important state interest, it is too broad and is not strictly tied to only serving this interest.

*Kummer* did consider whether the lack of consent by the minor victim of a sexual assault is an element of the crime. *See Kummer,* 100 Wis. 2d at 225, 301 N.W.2d at 243. At issue in *Kummer* was

---

[3] At issue in *Zablocki v. Redhail,* 434 U.S. 374, 375 (1978), was the constitutionality of § 245.10, STATS., 1973, which provided: "Wisconsin resident having minor issue not in his custody and which he is under obligation to support" may not marry, within Wisconsin or elsewhere, without first obtaining a court order granting permission. Because the right to marry is of fundamental importance and the classification at issue in *Zablocki* significantly interferes with that right, the Supreme Court made a "critical examination" of the state interests advanced in support of the classification. *See id.* at 383, 388. The Court concluded that even though the interests served by the statute may be legitimate and substantial, the means selected by the state unnecessarily impinged upon the right to marry. *See id.* at 388. In sum, the statutory classification could not be justified by the interests advanced in support of it. *See id.* at 390–91.

§ 940.225(2)(e), STATS., 1977, which provided that whoever has sexual contact or sexual intercourse with a person who is over the age of twelve years and under the age of eighteen years without consent of that person is guilty of a class C felony.[4] The supreme court concluded:

> The legislature set forth a policy determination that a person under the age of fifteen is not competent to give consent and that sexual contact or sexual intercourse with such a person is a criminal offense. Reading sec. 940.225(2)(e) and sec. 940.225(4) together yields the conclusion that consent is not an element of the offense of second-degree sexual assault if the victim is under fifteen years of age.

*Kummer*, 100 Wis. 2d at 227, 301 N.W.2d at 244.

We could easily dispose of Fisher's argument because we are bound by the decisions of our supreme court. *See State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). However, the approach Fisher takes, that it is a violation of his constitutional right to privacy to prevent him from establishing that the minor victim consented to sexual relations, was not considered by the supreme court in *Kummer*.

Although not mentioned explicitly in the Constitution, the United States Supreme Court has recognized that the Fourteenth Amendment extends protection to at least two different types of privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589,

---

[4] Section 940.225(2)(e), STATS., 1977, is the predecessor of § 948.02(2), STATS. *See* 1987 Wis. Act 332, §§ 30 and 55. *See also* para. 2 of notes following § 948.02 in 1987 Wis. Act 332, § 55.

599–600 (1977) (footnotes omitted). Cases examining the latter interest have involved "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis*, 424 U.S. 693, 713 (1976). The privacy interest implicated in this case concerns the interest in independence in making certain kinds of important decisions. The Wisconsin Supreme Court has also recognized the fundamental decisional right of a citizen to procreate or not. *See Eberhardy v. Circuit Court*, 102 Wis. 2d 539, 561–62, 307 N.W.2d 881, 891 (1981).

■ .

Even though the right to privacy is considered "fundamental" and personal, it is not absolute. *See State v. A.W.O.*, 117 Wis. 2d 120, 129, 344 N.W.2d 200, 204 (Ct. App. 1983). The state may reasonably regulate this right in order to protect society or in support of other legitimate interests. *See id.* Although Fisher acknowledges that his constitutional right to privacy is not absolute, he insists that because § 948.02(2), STATS., infringes upon his right to procreate it must pass the strict scrutiny test of *Zablocki. See supra* n.3. Fisher's reasoning is fallacious.

The fundamental flaw in his reasoning is his contention that the statute must pass the strict scrutiny test; in other words, Fisher argues that there must be a compelling state interest to justify a restriction of the privacy rights of an adult. Fisher ignores the clear statements made by the Supreme Court plurality in *Carey* that sexual conduct involving minors is not to be judged by the same rules as those which govern adults.[5]

---

[5] Justice Brennan was the author of *Carey v. Population Servs. Int'l,* 431 U.S. 678 (1977), and writing for himself and three other justices in Part IV of the decision remarked, "in the

> The question of the extent of state power to regulate conduct of minors not constitutionally regulable when committed by adults is a vexing one, perhaps not susceptible of precise answer. We have been reluctant to attempt to define "the totality of the relationship of the juvenile and the state." Certain principles, however, have been recognized. "Minors, as well as adults, are protected by the Constitution and possess constitutional rights." . . . On the other hand, we have held in a variety of contexts that "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults."

*Carey,* 431 U.S. at 692 (citations omitted) (quoted sources omitted). The *Carey* Court went on to clarify that state restrictions regulating the privacy rights of minors will be held to be valid if supported by " 'any significant state interest . . . that is not present in the case of an adult.' " *Id.* at 693 (quoted source omitted). In an accompanying footnote the Court explained:

> This test is apparently less rigorous than the "compelling state interest" test applied to restrictions on the privacy rights of adults. Such lesser scrutiny is appropriate both because of the States' greater latitude to regulate the conduct of children, and because the right of privacy implicated here is "the interest in independence in making certain kinds of decisions," and the law has generally regarded minors as having a lesser capability for making important decisions.

---

area of sexual mores, as in other areas, the scope of permissible state regulation is broader as to minors than as to adults. . . . [O]ur decision proceeds on the assumption that the Constitution does not bar state regulation of the sexual behavior of minors." *Id.* at 694 n.17.

*Id.* at 693 n.15 (citations omitted) (quoted source omitted). *Carey* establishes that a "compelling state interest" is not required to support distinctions based on age, at least as they apply to the decisional rights of minors to engage in sexual relations. A "significant state interest" is all that is required.

■

We hold that three counts of being a party to the sexual assault of a child under the age of sixteen § 948.02(2), STATS., serves a significant state interest in regulating sexual activity on the part of its children. The state has a strong interest in the ethical and moral development of its children. This state has a long tradition of honoring its obligation to protect its children from others and from themselves. *See Kummer*, 100 Wis. 2d at 231–32, 301 N.W.2d at 246. Section 948.02(2) has many salutary purposes; among the many significant interests of the state are the dangers of pregnancy, venereal disease, damage to reproductive organs, the lack of considered consent, heightened vulnerability to physical and psychological harm, and the lack of mature judgment. Further, the United States Supreme Court has itself observed that "teenage pregnancies . . . have significant social, medical, and economic consequences for both the mother and her child, and the State." *Michael M. v. Superior Court*, 450 U.S. 464, 470 (1981). Among the consequences of teenage pregnancies are the attendant psychological, medical and sociological problems associated with a child bearing a child.

■

The state's significant interest permits the legislature to forbid an adult from having sexual intercourse with a child younger than a legislatively fixed age. The state's significant interest permits the

legislature to eliminate the element of consent from the offense of sexual assault of a child under the age of sixteen. The state's significant interest prohibits Fisher's right to privacy as an adult from being enlarged to include sexual intercourse with a child under the age of sixteen, in violation of § 948.02(2), STATS.

Regrettably, Fisher's argument is not novel. Fortunately, there appear to be no cases holding that the constitutional right of privacy prevents a state from criminalizing an adult's sexual activity with a minor. The Supreme Court of Iowa has held that the state has a significant interest in regulating sexual activity of minors. *See State v. Munz*, 355 N.W.2d 576, 584–85 (Iowa 1984); *State v. Coil*, 264 N.W.2d 293, 294–96 (Iowa 1978). The court noted that the state may legitimately fix the age at which minors may consent to sexual intercourse or other forms of sexual conduct. *See Coil*, 264 N.W.2d at 296. Likewise in *Goodrow v. Perrin*, 403 A.2d 864, 866 (N.H. 1979), the New Hampshire Supreme Court held that an adult has "no privacy right to engage in sexual intercourse with a person whom the legislature has determined is unable to give consent."

Similarly, a Texas appellate case holds that a Texas statute appropriately protects minors from sexual abuse by other minors irrespective of the victim's consent. *See P.G. v. State*, 616 S.W.2d 635, 640–41 (Tex. Ct. App. 1981). In accord with these decisions, the Supreme Court of Utah, reviewing a defendant's conviction for sexual exploitation of a minor, noted that the state has a legitimate interest in the health, safety, morals and general welfare of minors. *See State v. Jordan*, 665 P.2d 1280, 1285 (Utah 1983). The Utah court concluded that the state can

prohibit sexual conduct with a minor regardless of the minor's consent. *See id.* Finally, the Vermont Supreme Court has addressed the same issue and concludes that the state has a "compelling interest" in protecting minors.[6] *State v. Barlow*, 630 A.2d 1299, 1300 (Vt. 1993).

Fisher makes a sophistic argument that the adoption of the new Juvenile Justice Code, ch. 938, STATS., depreciates the significant state interests in protecting minors from sexual intercourse. He contends that "to say that a youth can be held responsible criminally in adult court for conduct, and then to say that a youth the same age cannot form consent is to say the least inconsistent." The argument fails because the state's interests in holding children accountable for criminal acts are not contradictory to the state's interests in preventing sexual exploitation of children. In both cases the state's interest includes equipping juveniles with competencies to live responsibly and productively. *See* § 938.01(2), STATS. It is manifest that ch. 938 and § 948.02(2), STATS., both promote the legitimate state interest in the health, safety, morals and general welfare of minors. The statutes work in concert to fulfill the state's obligation to protect its children from others and from themselves. *See Barlow*, 630 A.2d at 1300.

■

Fisher complains that the trial court misused its discretion at sentencing by considering additional

---

[6] A number of cases, including some summarized above, are collected in *In re Pima County Juvenile Appeal No. 74802–2*, 790 P.2d 723, 730 (Ariz. 1990). It is evident from all of these cases that under any conceivable fact situation a state has significant interests in eliminating consent as an element to any and all types of sexual conduct involving minors.

crimes that Fisher was never found guilty of committing. He protests that the trial court punished him for sexual molestation of his co-actor when she was a teenager and for crimes that only the co-actor committed. We review a sentencing for a misuse of discretion which might be found if the trial court fails to state on the record the material factors which influenced its decision or if it gave too much weight to one factor in the face of other contravening considerations. *See State v. Larsen*, 141 Wis. 2d 412, 428, 415 N.W.2d 535, 542 (Ct. App. 1987). The weight to be given to each of the factors which influence its decision is particularly within the discretion of the trial court. *See id.*

At the sentencing hearing the trial court said:

> I often wondered what the relationship was between you and Valerie Carey [the co-actor]. Here's this gun-toting woman who is—supposedly was in charge of this bondage situation that went on for days and days, in which you held these two young girls hostage and engaged in these crude, degrading and assaultive acts. And, as you're aware, at the sentencing of Valerie Carey, I asked her in public, on the record . . . .

The court proceeded to relate a series of questions and answers from Carey that established her contentions that beginning when she was twelve Fisher, her brother-in-law, began to sexually molest her. The court then told Fisher that he had read this exchange to show Fisher's character.

Fisher maintains that *Rosado v. State*, 70 Wis. 2d 280, 234 N.W.2d 69 (1975), stands for the proposition that it is a misuse of sentencing discretion to sentence a defendant for uncharged crimes. He asserts that by the

677

trial court's focusing on his alleged sexual molestation of Carey when she was a teenager, it sentenced him for additional crimes he was never charged and convicted of committing. Fisher's argument is meritless. The trial court's discussion of Fisher's relationship with Carey, his sister-in-law, directly contradicts Fisher's contention at sentencing that he was a responsible family man deserving of probation. It supports that court's conclusion that "anyone that gets near you in any kind of relationship needs protection from you. I believe that you are manipulative." Further, the court concluded, "I believe that we are collectively all at risk because of your attitude toward your sexual behavior."

The trial court cannot be expected to conduct a sentencing in a vacuum. The court has the responsibility to acquire the full knowledge of the character and behavior of the defendant before imposing sentencing. *See Elias v. State*, 93 Wis. 2d 278, 285, 286 N.W.2d 559, 562 (1980). "In determining the character of the defendant and the need for his incarceration and rehabilitation, the court must consider whether the crime is an isolated act or a pattern of conduct. Evidence of unproven offenses involving the defendant may be considered by the court for this purpose." *State v. McQuay*, 154 Wis. 2d 116, 126, 452 N.W.2d 377, 381 (1990). In considering Fisher's unproven sexual molestation of Carey, the court fulfilled this responsibility and summarized the evidence supporting its justifiable assessment that Fisher's sexual behavior put the public at risk. *See State v. Johnson*, 158 Wis. 2d 458, 467, 463 N.W.2d 352, 356 (Ct. App. 1990).

Fisher also argues that it was a misuse of sentencing discretion for the trial court to consider the

entire course of Carey's criminal conduct involving the two minor victims when imposing sentence for the four counts for which he was convicted. After summarizing the evidence supporting the four counts Fisher was convicted on, the court described the entire course of criminal conduct perpetrated on the minor victims:

> The fact is it is uncontroverted that you were a willing and active participant in holding these two young girls hostage, in keeping them in a bondage situation, in participating, in observing and acting as a voyeur in permitting the behavior that has been described to go on. It goes on and on and on, in terms of the activities. And to suggest that you were ignorant and unknowing and a deceived individual is less than candid, in this Court's opinion.

> These two young girls were being groomed for prostitution in Chicago; they were subjected to acts of prostitution, which money was exchanged, there were acts, sexual acts, that were going on which suggest such degradation and such a lack of respect for these young girls, and such a lack of respect for each other that it defies description. The Court is offended and appalled by this kind of behavior. It is outrageous, it is decadent. In this court's opinion, you are a sexual predator.

The trial court then summarized the impact of this course of conduct on the victims:

> The Victim Impact Statement indicates that both of the victims have been in counseling; that they suffer nightmares; that they are—they have suffered personality changes suggests that the effects of your crimes will be long lasting.

The court's consideration of the criminal course of conduct involving the victims and the impact that

conduct had on them was used by the court to reach the conclusion:

> The fact that your approach to this is to shrug and say "Woe is me, Judge, I didn't know what was going on in that house" is a lack of candor, it's a lack of remorse, I believe is a lack of truthfulness.

We reject Fisher's argument that the trial court was sentencing him for crimes committed by Carey. When we review the court's reasons for sentencing, we reach the conclusions that the course of the criminal conduct goes to establishing Fisher's lack of remorse and repentance; it is indicative of the vicious or aggravated nature of the crimes Fisher personally committed; and, it reflects his degree of culpability. *See State v. Tew*, 54 Wis. 2d 361, 367–68, 195 N.W.2d 615, 618–19 (1972), *overruled on other grounds*, 65 Wis. 2d 415, 222 N.W.2d 696 (1974). All of the reasons advanced by the court for imposing the sentence are appropriate factors for consideration.

The judge adequately explained his reasoning for imposing the sentence on the record. There is nothing in the record to indicate that the trial court's sentencing decision was based upon improper factors. We can find no misuse of discretion. Accordingly, we affirm.

*By the Court.*—Judgments and order affirmed.