**William Joseph WEBER, a Minor, by Clarice Weber, His Mother and Natural Guardian, a Minor, by William Weber, Jr., Her Parent and Natural Guardian, Appellant,**

v.

**Florence E. ANDERSON, Personal Representative of the Estate of Grant A. Anderson, Deceased, Respondent.**

No. 47787, 47891.

Supreme Court of Minnesota.

Aug. 18, 1978.

Kelly & O'Leary, J. Brian O'Leary, Springfield, for appellant.

Gislason, Dosland, Malecki, Gislason & Halvorson, Daniel A. Gislason, New Ulm, for respondent.

Heard before PETERSON, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

This appeal presents a single question: Whether a paternity action under Minn.St. 257.251 to 257.33 may be commenced after the death of the putative father to allow inheritance under Minn.St. 525.172. It is an issue of first impression in this state. The district court held that the paternity action did not survive the putative father's death and granted summary judgment accordingly. We conclude otherwise and reverse.

The complaint alleges that during May 1975 and at various other times Grant Anderson had sexual intercourse with Clarice Weber and that Anderson was the father of plaintiff, William Joseph Weber, who was born to Clarice Weber on February 23, 1976. Anderson was killed in an accident in November 1976, about 9 months after plain-

tiff's birth. Shortly after Anderson's death, this action was brought on plaintiff's behalf against the personal representative of Anderson's estate.

At common law a child born out of wedlock was said to be filius nullius, the child of no one, or filius populi, the child of the people. *Brewer v. Blougher,* 39 U.S. (14 Pet.) 178, 198, 10 L.Ed. 408, 418 (1840); *Jung v. St. Paul Fire Dept. Relief Assn.,* 223 Minn. 402, 404, 27 N.W.2d 151, 153 (1947). Consistent with this view, the common law accorded the child no right to inherit from its father. *Reilly v. Shapiro,* 196 Minn. 376, 265 N.W. 284 (1936). This harsh rule of common law was long ago tempered by statute to at least allow a child born out of wedlock to inherit from its father where the father had acknowledged paternity in a writing signed in the presence of a competent witness. See, e. g., G.S.1894, § 4473, which later became Minn.St. 525.172. But where a written and witnessed acknowledgment could not be produced, the statute did not permit the child to inherit from its father, even though the father's paternity was conclusively established. *In re Estate of Karger,* 253 Minn. 542, 93 N.W.2d 137 (1958). In *In re Estate of Pakarinen,* 287 Minn. 330, 338, 178 N.W.2d 714, 718 (1970), appeal dismissed sub nom. *Hietala v. Heir of Pakarinen,* 402 U.S. 903, 91 S.Ct. 1384, 28 L.Ed.2d 644 (1971), while upholding constitutionality of the statute, we suggested to the legislature that "some better way might be devised to further mitigate the inhuman effect of the common-law rule  *  *  *."

Shortly thereafter, in 1971, the legislature amended § 525.172 so that it provided as follows:

"An illegitimate child shall inherit from his mother the same as if born in lawful wedlock, and also from the person who in writing and before a competent attesting witness shall have declared himself to be his father, provided such writing or an authenticated copy thereof shall be produced in the proceeding in which it is asserted *or from the person who has been determined to be the father of such child in a paternity proceeding before a court of competent jurisdiction* ; but such child shall not inherit from the kindred of the father by right of representation." (Italics supplied.) L.1971, c. 122.

Thus, the plaintiff may inherit under the amended § 525.172 if he can commence and prevail in a paternity proceeding.

As we indicated, this is an issue of first impression in this state. We acknowledge at the outset that a substantial majority of courts which have considered the question have held that a paternity action may not be brought after the death of the putative father. See Annotation, 58 A.L.R.3d 188. *Carpenter v. Sylvester,* 267 So.2d 370, 58 A.L.R.3d 183 (Fla.App.1972), is an example. Although Florida's general statute for survival of actions was seemingly broad enough so that all causes of action would survive the death of the person liable, the court nonetheless ruled that a paternity action could not be maintained after the death of the putative father because the statute authorizing paternity actions did not contain a specific provision authorizing such an action. The court reasoned that since the paternity statute was in derogation of the common law, it had to look solely to the paternity statute to determine whether the action survived the death of the alleged father. Since the paternity statute did not contain a specific provision authorizing the maintenance of such an action after the death of the alleged father, the court held that the action could not survive his death.

Our paternity statute—see §§ 257.251 to 257.33—similarly does not contain a specific provision for the survival of the action after the death of the putative father.[1] However, although our paternity

---

1. Defendant argues that the statute's requirements of "personal service upon the defendant of a civil summons" indicates a legislative intent to allow commencement of the action only while the putative father is alive and may be served. Such intent, of course, could have been clearly indicated by using the term "putative father" rather than "defendant" in specifying who should be served. It seems equally plausible that the term "defendant" was used

statute is also in derogation of the common law, we follow the principle that the statute should not be strictly construed but instead should be liberally construed to give effect to its remedial and humanitarian purposes. This approach is consistent with the strong thrust of modern law to accord children born out of wedlock the same legal status as other children.[2]

■ Because we liberally construe the paternity statute, we do not believe that the absence of a specific provision in the statute bars maintenance of a paternity action after the death of the putative father, and we accordingly rely on the broad provisions of Minn.St. 573.01, the general statute governing the survival of causes of action.

Section 573.01 provides as follows:

"A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02 [wrongful death statute]. It also dies with the person against whom it exists, except a cause of action arising out of bodily injuries or death caused by the negligence of a decedent or based upon strict liability, statutory liability or breach of warranty of a decedent, survives against his personal representatives. All other causes of action by one against another, whether arising on contract or not, survive to the personal representatives of the former and against those of the latter."

The first two sentences of § 573.01 make special provisions for causes of actions "arising out of an injury to the person," provisions clearly inapplicable to paternity actions. However, the final sentence of the statute provides: "All other causes of action by one against another * * * sur-

vive to the personal representatives of the former and against those of the latter." We conclude that this general provision embraces paternity actions.

In reaching this conclusion, we recognize the legitimate concern that has been expressed in some of the cases from other jurisdictions about the risk of fraudulent claims against the putative father's estate. However, this risk is not significantly greater in paternity actions brought after the putative father's death than in many other types of actions, including an action by a party seeking to prove that he is the *legitimate* child of a decedent. Most importantly, we believe the risk is outweighed by the injustice which is done to the innocent child by denying it an adjudication of paternity simply because its putative father happened to die.

■ We believe that the risk of fraudulent claims in this context is better met, not by barring all such causes of action, but by requiring clear and convincing proof by the plaintiff that the putative father was in fact the father. This requirement provides a significant measure of protection to the putative father's estate, but does not take from the child all opportunity to prove paternity. "Clear and convincing proof" means exactly what is suggested by the ordinary meanings of the terms making up the phrase. Satisfaction of this standard requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. Clear and convincing proof will be shown where the truth of the facts asserted is "highly probable."

■ Having emphasized the requirement of clear and convincing proof, we also wish to emphasize that we do not mean to imply that establishing paternity is the

---

by the legislature to allow initiation of a paternity action, like other civil actions, by service on a defendant who is the personal representative of a decedent's estate.

**2.** *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768

(1972); *Glona v. American Guarantee & Liability Ins. Co.,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Unborn Child v. Evans,* 310 Minn. 197, 245 N.W.2d 600 (1976); *Northwestern National Bank of Minneapolis v. Simons,* 308 Minn. 243, 242 N.W.2d 78 (1976).

same as establishing a right to support. This is governed by Minn.St. 257.256, which provides as follows:

"The obligation of the estate of the father for liabilities under sections 257.-251 to 257.259, 257.261 to 257.264 and 257.27 to 257.33 is limited to amounts accrued prior to his death and such sums as may be payable for dependence under other laws."

The purpose of this provision is to prevent judgments under the paternity statute from being enforced in such a way that an illegitimate child might be preferred over a legitimate child, who may be partly or completely disinherited by will. See, Commissioner's Note to § 4 of the Uniform Act of Paternity, after which § 257.256 is modeled. All we hold is that an action to determine the fact of paternity may be maintained after the death of the putative father. What this means in the instant case is that if plaintiff can meet his strong burden of proving decedent was his father, he can inherit from decedent's estate pursuant to the provisions of § 525.172.

Reversed and remanded for trial.

SHERAN, C. J., and OTIS, J., took no part in the consideration or decision of this case.