**STATE of Minnesota on Behalf of Marianne KREMIN, petitioner, Respondents,**

v.

**Jimmy Lee GRAHAM, Appellant.**

**Jean Marie PEARSON, and County of Anoka, Respondents,**

v.

**Lawrence LeRoy LOEFFLER, Defendant,**

**Scott Rosequist, Appellant.**

**Nos. 81–846, 81–984.**

Supreme Court of Minnesota.

May 7, 1982.

Arndt & Benton, Minneapolis, for Graham in No. 81–846 and Rosequist in No. 81–984.

James Clifford, County Atty., and John D. Ellenbecker, Asst. County Atty., Center City, for State on behalf of Kremin in No. 81–846.

Robert W. Johnson, County Atty., and Robert A. Stanich, Asst. County Atty., Anoka, for Pearson and County of Anoka in No. 81–984.

WAHL, Justice.

These consolidated appeals challenge the constitutionality of Minn.Stat. § 257.62, subd. 1 (1980), which provides for compulsory blood tests in paternity actions upon the request of a party to the action or on the court's own motion. Appellant putative fathers, who appeal from orders that they submit to blood tests, contend that (1) the statute is primarily designed to further private interests and, therefore, is not proper legislation under the police power, (2) the statute violates substantive due process, and (3) the statute violates their right of privacy and their right not to have their bodily integrity violated. We affirm.

The challenged statute provides as follows:

> Subdivision 1. The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood tests or genetic tests, or both.

> The tests shall be performed by a qualified expert appointed by the court.

> Subd. 2. The court, upon reasonable request by a party, shall order that independent tests be performed by other qualified experts.

> Subd. 3. In all cases, the court shall determine the number and qualifications of the experts.

> Subd. 4. The refusal to submit to blood tests or genetic tests, or both, may be admitted into evidence and is subject to the sanctions within the jurisdiction of the court.[1]

Minn.Stat. § 257.62 (1980).

This law was enacted in 1980, in response to this court's opinion in State ex rel. Ortloff v. Hanson, 277 N.W.2d 205 (Minn.1979), in which we discussed the recent developments in blood testing to establish paternity and urged the legislature to "consider the entire matter of blood testing in the context of paternity actions." Id. at 207. The provisions which the legislature chose to enact were taken from the Uniform Parentage Act.

Defendants do not cite any cases holding such legislation unconstitutional. On the other hand, a number of cases have upheld the constitutionality of identical or similar statutes: Rose v. District Court of Eighth Judicial District, Mont., 628 P.2d 662 (1981); Jane L. v. Rodney B., 108 Misc.2d 709, 438 N.Y.S.2d 726 (1981); State v. Meacham, 93 Wash.2d 738, 612 P.2d 795 (1980).

Recently, in Little v. Streater, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), the United States Supreme Court struck down as offending due process a Connecticut statute which, by requiring that the costs of

---

1. See also section 257.63, subd. 1 (1980), providing for the admissibility of blood test results and expert testimony interpreting the results, including probability testimony, and section 257.64, subds. 1 and 3 (1980), providing, in relevant part, as follows:

> Subdivision 1. On the basis of the information produced at the pretrial hearing, the court may, and if requested by a party, shall evaluate the probability of determining the existence or nonexistence of the father and child relationship in a trial and whether a judicial declaration would be in the best in-

terest of the child. On the basis of the evaluation, an appropriate recommendation for settlement shall be made to the parties * * *.

> * * * * * *

> Subd. 3. If a party refuses to accept a recommendation made under subdivision 1 and blood tests have not been taken, the court shall require the parties to submit to blood tests, if practicable. Thereafter the court shall make an appropriate final recommendation. If a party refuses to accept the final recommendation the action shall be set for trial.

blood tests be borne by the party requesting them, had the effect of denying indigent defendants the right to demand blood tests. The Court, in a unanimous opinion by Chief Justice Burger, briefly describes the effectiveness of blood tests in negating paternity[2] and quotes from an opinion by Justice Brennan when he was a member of the Appellate Division of the New Jersey Superior Court, *Cortese v. Cortese*, 10 N.J.Super. 152, 76 A.2d 717 (1950).[3] The opinion then shows the state involvement in the action and proceeds to balance the various factors and interests, including the need for and effectiveness of such evidence. The opinion speaks of exclusionary blood test evidence as a valuable procedural safeguard. It also speaks of the interests of all the parties, including the defendant's interest, in having the child's paternity determined in a fair and efficient manner.

Other United States Supreme Court cases bearing on the issue before us include *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), (holding that F.R.C.P. 35, which at the time did not specifically provide for blood tests but did provide for mental or physical examination of any party, was "free of constitutional difficulty"), and *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (upholding compelled warrantless removal of blood from driver involved in accident as an incident of his arrest where there was a clear indication that evidence of intoxication would be found, where test was performed in a reasonable manner by a qualified person in a proper medical environment, and where failure to act promptly would have resulted in the destruction of the evidence).

■ In the instant cases defendants argue first that the statute is primarily de-signed to further private interests and, therefore, is not proper legislation under the police power. This argument fails. There are many interests advanced by the statute, public as well as private. The public has a primary interest in seeing that the paternity of children is accurately determined. The public has an interest in cutting welfare costs by requiring the true father to contribute to the child's support. The public has an interest in seeing that paternity actions are disposed of efficiently. All of these interests are furthered by the blood testing mandated by section 257.62, subd. 1.[4]

■ Defendants' next argument, that the statute violates substantive due process, is without merit, given our general practice of acceding to the judgment of the legislature on questions of social policy.

■ Defendants finally argue that the statute violates their right of privacy and their right not to have their bodily integrity violated. We can appreciate this argument. We follow the appropriate balancing approach used in *Minnesota State Board of Health v. City of Brainerd*, 308 Minn. 24, 37, 241 N.W.2d 624, 631 (1976), *appeal dismissed*, 429 U.S. 803, 97 S.Ct. 35, 50 L.Ed.2d 63 (1976),[5] however, and hold that the state's interests in compelling the removal of blood from a putative father for the purpose of determining the paternity of a child outweigh the putative father's right not to have his bodily integrity violated by such a test. The state has a substantial interest in determining the paternity of children, and there are also significant private interests involved; indeed, in some cases it will be the putative father demanding blood testing. As the court determined in *Schmerber*, blood testing is a limited

---

**2.** The opinion fails to mention the newly established effectiveness of such tests in *establishing* paternity. In the case before it the tests were exclusionary tests.

**3.** That opinion, among other things, ruled that it was error not to compel a mother or child to submit to blood testing requested by the defendant.

**4.** It should be obvious that the child has a compelling interest, emotional and biological, in the accurate determination of parentage.

**5.** Specific factors to be considered in such a balancing analysis are (1) the importance of the state's purpose in requiring the intrusion in question, (2) the nature and seriousness of the intrusion, (3) whether the state's purpose justifies the intrusion, and (4) whether the means adopted is proper and reasonable.

form of intrusion into one's bodily integrity or privacy. The state's compelling interests here easily outweigh the comparatively limited interest of the party in preserving his bodily integrity from such an intrusion. In many cases blood testing is the only reliable way of determining paternity. Finally, as in *Schmerber*, the means adopted to achieve the state's purpose are proper, safe and reasonable.

In summary, we uphold the constitutionality of the statute against this challenge.

Affirmed.