**In re the Marriage of Roger A. PETERSON, Petitioner, Appellant,**

v.

**Dianne PETERSON, n.k.a. Dianne Brennan, Respondent.**

No. C2–86–1499.

Court of Appeals of Minnesota.

March 31, 1987.

Thomas W. Wexler, Peterson, Engberg & Peterson, Minneapolis, for petitioner, appellant.

Alan C. Eidsness, Henson and Efron, P.A., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and SEDGWICK and

CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This appeal concerns the standing of a divorced father to obtain compulsory blood tests showing whether he is the biological parent of a 17–year old child of his former spouse. The trial court denied the father's motion, and we affirm.

## FACTS

The child's parents were divorced in 1973, four years after their daughter was born. Twelve years later, the child indicated to appellant, her noncustodial parent, that she knew there was some question whether she was his daughter. For many years appellant had harbored doubts that he was the child's father.

Following the child's remark on the topic, appellant moved the trial court for an order to compel submission of blood samples for testing. Because appellant is bound by the dissolution judgment's determination of parentage, he could not and did not seek a readjudication of parentage or relief from his determined parental obligations. Instead, he argued that a nonbinding medical determination of parentage is necessary for the welfare of the child and of his relationship with the child. This appeal followed a trial court decision denying appellant's motion and awarding respondent attorney fees.

## ISSUES

1. Did the court err in declining to act on a request for compulsory blood testing?

2. Did the court abuse its discretion in awarding respondent $1800 attorney fees?

## ANALYSIS

1. The trial court may interfere with a custodial parent's care and supervision of a child upon a showing that such interference is necessary because "the child's physical or emotional health is likely to be endan-gered or the child's emotional development impaired." Minn.Stat. § 518.176, subd. 1 (1986). *See id.*, 518.131, subd. 1(i) (1986) (temporary relief to protect a child from "physical or emotional harm").

■ Appellant failed to show or offer to prove that blood testing was necessary to protect the child from danger or for any other compelling interest of himself, the child or others. In a supporting affidavit accompanying his motion, appellant observed his parentage "should either be confirmed or refuted for her welfare, for my welfare, and for the welfare of our relationship." He added:

The continued doubt of this matter is more injurious than the certainty either way as to both [the child] and myself and her future children. It will be to our mutual benefit emotionally and psychologically and from a physical health standpoint if we both know the truth. * * * It would seem to be in the best interests of all of us to have this matter determined. * * * Everybody will benefit, and we will know the truth about [the child's] parentage.

Appellant's conclusory observations are not confirmed by an offer of supporting evidence. Evidence the child stated and then retracted her support for the test does not show her wishes or her best interests. Appellant claims the testing "could have" future value "in the event of" a medical emergency or decisionmaking based on medical history, but such a claim does not support a present request for relief. Finally, in a few months time, the child will be emancipated and can make an independent choice about resolving any doubts about her parentage.

■ Appellant's case is governed, alternatively, by prior decisions on blood testing in parentage cases. Although "blood testing is a limited form of intrusion into one's bodily integrity or privacy," it will only be compelled if demonstrated state and private interests "outweigh the [individual's] right not to have [their] bodily integrity violated by such a test." *State ex rel.*

*Kremin v. Graham,* 318 N.W.2d 853, 855–56 (Minn.1982).

As is stated above, appellant has failed to show, or even to offer to prove, that blood testing was necessary to satisfy any compelling interest of himself, the child, or others. Because he is not questioning the legal determination of the child's parentage, the public interests justifying compulsory blood tests in paternity actions are not at issue here. *See id.* (public has interest in seeing that paternity of children is accurately determined, in cutting welfare costs by requiring true father to contribute to the child's support, and in efficiently disposing of paternity actions).

Appellant's conclusions regarding the injury created by the "continued doubt of this matter" are not supported by established public policy. Public policy supported a resolution of the parentage question over thirteen years ago, when determination of parentage had to be made to dispose of the dissolution case, and when the ongoing support obligation for the child's well-being was at issue. The dissolution proceeding addressed the child's compelling interest in the accurate determination of parentage. *See id.* at 855 n. 4. At this point in time, however, the circumstances require appellant to show that the child's physical or emotional health is likely to be endangered by not having the test. The danger has not been shown.

■ Appellant also suggests the obligation of the trial court to appoint a guardian ad litem to investigate and advocate the interests of the child on the testing issue. *See* Minn.Stat. § 518.165, subd. 1 (1986). Generally, the trial court has broad discretion to decide whether a guardian should be appointed. *Corwin v. Corwin,* 366 N.W.2d 321, 325 (Minn.Ct.App.1985). *Cf.* Minn. Stat. § 518.165, subd. 2 (1986) (court must appoint guardian where there is reasonable belief a child is the victim of domestic abuse or neglect); *M.M. vs. R.R.M.,* 358 N.W.2d 86, 89 (Minn.Ct.App.1984) (appointment of guardian ad litem required where children's interests are undeniably different from parent interests). We find no basis in this record to assert a compelling need to appoint a guardian to protect the child's interests, nor is it appropriate to suggest the court must provide for a factual investigation based on the slight showing here of significant risk to the interests of the child.

The court did not err in concluding there was nothing in this record to establish its jurisdiction to require a nonbinding medical determination of parentage, or to compel further investigation of pertinent facts.

■ 2. The trial court awarded respondent $1800 for attorney fees related to appellant's motion. The motion dealt with the blood test issue and appellant's request for future reduction of child support; the trial court found the support request was presented prematurely. Although the trial court referee recommended part of the award based on disparate income of the parties, the trial judge ordered fees based on the lack of merit in appellant's motion. *See* Minn.Stat. § 549.21 (1986). We find no basis to suggest an abuse of the trial court's discretion in concluding the motion was frivolous on the facts presented. The trial court's decision on the amount of the award was supported by the evidence and within the court's broad discretion. *See id.; Fick v. Fick,* 375 N.W.2d 870, 874–75 (Minn.Ct.App.1985).

Respondent has moved for attorney fees on appeal, claiming such an award is necessary to defend the appeal and is justified by the frivolous nature of the appeal. Minn.Stat. § 549.21 (1986). She claims attorney fees of $1551.

This appeal involves a novel legal question, but one argued twice in the trial court. There has been no oral argument here, and appellant has not made a serious factual case for the relief requested. We limit attorney fees on appeal to $750.

## DECISION

The trial court did not abuse its discretion in denying appellant's motion for blood testing, or in awarding respondent attorney

fees. Respondent is awarded $750 attorney fees on appeal.

Affirmed.