Diana Mandell VOSS, et al.,
Respondents,

v.

John DUERSCHERL, father of Terry
Allan Duerscherl, deceased, et
al., Appellants.

No. CX–87–224.

Court of Appeals of Minnesota.

June 16, 1987.

Review Granted Aug. 19, 1987.

Thomas Foley, Ramsey Co. Atty., Brad A. Johnson, Asst. Co. Atty., St. Paul, for respondents.

Seth M. Colton, Mary L. Knoblauch, Maun, Green, Hayes, Simon, Johanneson and Brehl, St. Paul, for appellants.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Appellants are the blood relatives of the deceased putative father of respondent Voss' son. This appeal is from an order directing appellants to submit to blood tests to determine paternity pursuant to Minn.Stat. § 257.62, subd. 1 (1986). We affirm.

## FACTS

This appeal represents the latest chapter in protracted litigation that has already been before three referees, nine different trial judges and twice before this court.

On December 9, 1969, Diana Mandell Voss gave birth to a son, Christopher Allan Duerscherl. Thirteen years later, respondents Voss and Ramsey County served a summons and complaint on the child's putative father, Terry Allan Duerscherl, to determine paternity. The trial court ordered Voss, Duerscherl and the child to undergo blood tests, but Duerscherl died before his scheduled blood test. A second trial court then issued an order substituting Kay L. Howard, Duerscherl's personal representative, as a party defendant. The court also

denied respondents' motion to direct appellants John Duerscherl (Terry Duerscherl's father), Jon J. Duerscherl (Duerscherl's brother), and Gloria Duerscherl DeWolf (Duerscherl's sister) to submit to blood tests, because they were not parties to the action. In January 1983 respondents moved to join appellants as party defendants and requested an order for the testing of their blood. Their motion was subsequently withdrawn.

Effective June 10, 1983, Minn.Stat. § 257.62, subd. 1, was amended to authorize trial courts to order blood tests of a deceased putative father's parents or siblings to determine paternity for the purpose of establishing the child's right to public assistance. 1983 Minn.Laws ch. 308, § 8. On July 25, 1983, after a third trial court had discharged Howard as Duerscherl's personal representative, respondents moved the trial court to direct appellants to submit to blood tests pursuant to the amended statute. A fourth trial court denied the motion because appellants were not given notice of the hearing or the motion.

In February 1984 the parties again appeared before the second trial court, which issued an order substituting the decedent's father as a party defendant and ordering appellants to submit to blood tests. Appellants did not appear for the testing, and in December 1984 a fifth trial court issued an order to show cause why the parties should not be held in contempt of court for failure to appear. In February 1985 a sixth trial court denied the contempt motion but found that the February 1984 order compelling blood tests was res judicata and that the court could not entertain further legal arguments absent an appeal or motion to vacate that order.

In April 1985 a referee denied appellants' motion to vacate the February 1985 order or, alternatively, to dismiss the action entirely. A seventh trial court then remanded the matter to a second referee to determine whether the court had personal jurisdiction over appellants. The referee issued an order, approved by an eighth trial court,

stating that the February 1984 order remained in full force and effect.

On October 8, 1985, the Duerscherls appealed the September 1985 order to this court. This court dismissed the action, holding that the order was appealable and that appellants could not be required to submit to blood tests absent proper service of summons and complaint. *Voss v. Duerscherl,* 384 N.W.2d 499, 502 (Minn.Ct.App. 1986).

Respondents subsequently initiated this second action against appellants in July 1986, seeking a determination of paternity and moving for an order directing appellants to submit to blood-testing. On January 2, 1987, the third referee signed an order, confirmed by a ninth trial court, directing appellants to submit to blood-testing. The Duerscherls appeal from that order.

## ISSUES

1. Was the order directing appellants to submit to blood-testing appealable?

2. Does this paternity action survive the death of the putative father and the discharge of his personal representative?

3. Are appellants proper parties to this action?

4. Did the trial court err by retroactively applying an amendment to Minn.Stat. § 257.62, subd. 1, that became effective after the putative father's death?

5. Does application of Minn.Stat. § 257.62, subd. 1, violate appellants' constitutional rights to due process and privacy?

6. Are respondents collaterally estopped from bringing a motion to compel blood-testing of appellants?

7. Did respondents waive their right to compel blood-testing of appellants by failing to appeal certain trial court orders in the previous action?

## DISCUSSION

### I

Respondents contend the January 2, 1987, order is not appealable. They argue that any appealable issue that may be

present would be preserved for review following the determination of paternity and that review would be appropriate at that time.

Minn.R.Civ.App.P. 103.03(g) provides for review of "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." The supreme court has defined a "special proceeding" as a "generic term for any civil remedy in a court of justice which is not of itself an ordinary action." *Chapman v. Dorsey*, 230 Minn. 279, 283, 41 N.W.2d 438, 440 (1950). A special proceeding is usually created by a specific statute that prescribes a particular right or remedy and provides a procedure that must be followed to enforce that right or remedy. E. Magnuson, D. Herr & R. Haydock, 3 *Minnesota Practice* § 103.12 (1985).

■ This action was a "special proceeding" under Rule 103.03(g) because Minn. Stat. § 257.62, subd. 1 (1986), prescribes a particular right or remedy and provides a procedure that must be followed to enforce that right or remedy. The trial court's order affected a substantial right of appellants, i.e., their right to be free from a court-ordered blood test. If, as respondents suggest, this action is not appealable until after a determination of paternity has been made, any relief granted on appeal would be ineffective, because appellants' rights will already have been invaded.

■ Moreover, this court already decided this issue in the first appeal, which was taken from an order stating that the trial court had jurisdiction to order appellants to submit to blood tests. Respondents moved this court to dismiss the appeal as taken from a nonappealable order, but the motion was denied on the ground that "the order is final and affects substantial rights of appellants." By opinion, this court once again held that the order was appealable. *Voss v. Duerscherl*, 384 N.W.2d 499, 502 (Minn.Ct.App.1986) (hereinafter "*Voss I*") ("The * * * order was concluded as final and affecting substantial rights of appellant. Appeal is therefore made from an appealable order.") Our view on this issue has not changed.

**II**

■ Appellants contend the cause of action did not survive the putative father's death and the discharge of his personal representative. This issue also has already been decided. In *Weber v. Anderson,* 269 N.W.2d 892 (Minn.1978), the Minnesota Supreme Court held that a paternity action could be maintained after the putative father's death. In that case the minor, by his mother and natural guardian, brought a paternity action directly against the putative father's personal representative. The *Weber* court stated that "the absence of a specific provision in the [paternity] statute [did not bar] maintenance of a paternity action after the death of the putative father," *id.* at 895, and concluded:

> All we hold is that an action to determine the fact of paternity may be maintained after the death of the putative father. What this means in the instant case is that if plaintiff can meet his strong burden of proving decedent was his father, he can inherit from decedent's estate pursuant to the provisions of [the paternity statute].

*Id.* at 896.

Appellants argue that *Weber* should be read narrowly, permitting paternity actions to be maintained only against the decedent's personal representative. They contend *Weber* does not provide any authority for an action against a deceased putative father's relatives, because the issue in *Weber* was whether a paternity action could be brought against the deceased putative father's personal representative. The court in *Weber* relied on Minn.Stat. § 573.01 (1978), which expressly provided that all actions other than wrongful death actions survive *against the personal representative of the defendant.* However, the exact holding in *Weber* was that "an action to determine the fact of paternity may be maintained after the death of the putative father." *Weber*, 269 N.W.2d at 896. The court did not expressly limit its holding to actions against the personal representative.

Appellants further argue that *Weber* is distinguishable because the court based its decision on the "remedial or humanitarian purposes" of the paternity statutes. However, the remedial or humanitarian purposes of the statutes will be served here as well. As the *Weber* court noted, an injustice is done to an innocent child when he or she is denied an adjudication of paternity "simply because [the] putative father happened to die." *Id.* at 895.

Recent amendments to the Minnesota Parentage Act also reflect the legislature's intent to permit the determination of paternity after the death of the alleged father. When enacted in 1980, Minn.Stat. § 257.62, subd. 1 (1980), provided only that the court could require the child, mother and alleged father to submit to blood tests to determine paternity. In 1983, however, the legislature added the following provision: "If the alleged father is dead, the court may, and upon the request of a party, shall, require the decedent's parents or brothers and sisters or both to submit to blood tests." Minn.Stat. § 257.62, subd. 1 (Supp.1983). Thus, while the legislature has not expressly authorized the maintenance of paternity suits against a deceased putative father's relatives, it has authorized trial courts to order such relatives to submit to blood tests. This indicates the legislature's belief that accurate determinations of the paternity of children born out of wedlock outweigh any intrusion on the privacy of the relatives.

### III

Appellants argue that they are not proper parties to this action because respondents have not stated a cause of action or claim for relief against them. There is no merit to this claim. Appellants' argument directly contradicts the position they successfully took in the first appeal of this case. Appellants claimed that section 257.62, subd. 1, granted them certain rights and provided for the assertion of those rights "by requiring the putative father's relatives to be made party to the litigation and served with summons and complaint." *Voss I*, 384 N.W.2d at 502. Appellants cannot claim on one hand that the statute requires them to be made parties to the litigation and claim on the other hand that they are not proper parties to the litigation.

Appellants' argument also ignores the existence of the declaratory judgment statutes, which are analogous to paternity actions in that neither necessarily requires a claim for remedial relief. Minn. Stat. § 555.01 (1986) empowers courts to declare the "legal relations" of parties "whether or not further relief is or could be claimed." Moreover, under Minn.Stat. § 555.11 (1986), "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration * *." Appellants clearly have an interest in this proceeding and their reluctance to comply with the court order indicates their belief that they will be affected by a declaration of paternity.

### IV

Appellants next claim the trial court retroactively applied the 1983 amendment to Minn.Stat. § 257.62, subd. 1 (1986). Prior to 1983, that statute provided only that blood tests could be required of the child, mother, or alleged father in a paternity proceeding. It was not until enactment of the 1983 amendment that the statute empowered courts to require testing of other blood relatives. This amendment was effective June 10, 1983, nearly a year after Terry Allan Duerscherl's death.

Minn.Stat. § 645.21 (1986) provides that "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." There is no evidence of such legislative intent here, but we do not believe the trial court applied the statute retroactively.

*Cooper v. Watson*, 290 Minn. 362, 369, 187 N.W.2d 689, 693 (1971), defined a retroactive or retrospective law as "one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past."

Appellants argue that application of the amended statute created a new obligation and imposed a new duty on them, because they were not subject to court-ordered blood-testing at the time of the putative father's death. However, the court would have had the authority to order appellants to undergo blood-testing before the 1983 amendment went into effect. Minn.R. Civ.P. 35.01 provides that "[i]n an action in which * * * the blood relationship of a party * * * is in controversy, the court in which the action is pending may order the party to submit to * * * blood examination by a physician." The supreme court has noted that this rule authorizes trial courts to order blood examinations for parties to a paternity action. *See State on Behalf of Hastings v. Denny,* 296 N.W.2d 378, 380 (1980) ("we strongly reiterate our belief that recently developed blood tests should be ordered [under Rule 35.01] whenever possible to obtain them in adjudications of paternity"); *see also,* C. Wright, *A Primer of Practical Evidence,* 40 Minn.L.Rev. 635, 653–54 (1956) (discussing admissibility of blood test results ordered pursuant to Rule 35.01 in paternity actions). As discussed above, appellants are proper parties to this action under *Voss I* and the declaratory judgment statutes. Thus, appellants could have been ordered to undergo blood-testing under Rule 35.01 before section 257.62, subd. 1, was amended.

We also note that it seems analytically dubious to term the trial court's actions here a retroactive application of the law. Appellants have been members of a certain class of people, i.e., parents or siblings of a deceased putative father, since Duerscherl died in 1982. New legislation went into effect in 1983, placing certain burdens, i.e., the possibility of being directed to undergo court-ordered blood tests, on members of that class. Because appellants are still members of that class, they are within the purview of the new statute. This situation is analogous to the case in which the government passes a new law requiring men over 19 years old to register for the military draft. A man who is 25 years old when the law goes into effect would come within the scope of the law even though he became a member of the affected class before the law was passed, because he was still a member of the class after the law went into effect. He could not claim the law was being applied retroactively.

## V

Appellants contend that Minn.Stat. § 257.62, subd. 1, as applied to a deceased putative father's relatives, violates the state and federal constitutional rights to due process and privacy. Minn.Stat. § 645.17, subd. 3, creates a presumption that statutes are not violative of the federal or state constitutions. Appellants have failed to overcome this presumption.

■ In *State on Behalf of Kremin v. Graham,* 318 N.W.2d 853 (Minn.1982), the supreme court addressed the constitutionality of section 257.62, subd. 1, before the 1983 amendment. Although *Kremin* addressed the statute as applied to living putative fathers, it nevertheless set a framework for addressing the constitutionality of the statute as applied to appellants.

The court in *Kremin* first summarily dismissed the claim that the statute violated putative fathers' rights to substantive due process. The court held that this contention was "without merit, given our general practice of acceding to the judgment of the legislature on questions of social policy." *Id.* at 855. This same rationale applies to appellants' substantive due process claim.

■ The *Kremin* court went into greater detail in addressing the claim that the statute violated putative fathers' rights to privacy. Holding that the state's interest in determining paternity outweighed the putative father's right not to have his bodily integrity violated by such a test, the court set forth four factors to be balanced in a right-to-privacy analysis:

(1) the importance of the state's purpose in requiring the intrusion in question,

(2) the nature and seriousness of the intrusion,

(3) whether the state's purpose justifies the intrusion, and

(4) whether the means adopted is proper and reasonable.

*Id.* at 855 n. 5.

Applying these factors, we hold that the statute is constitutional as applied here. First, the state's purpose in requiring the intrusion is important. The state has a strong interest in the accurate determination of paternity and in resolving paternity actions efficiently. The state also has a strong interest in ensuring the proper allocation of public assistance funds among county, state and federal agencies. The legislature recognized this interest when it enacted section 257.62, subd. 1. In addition, the child has a strong interest in knowing the identity of his or her father. Moreover, not to be overlooked is the compelling public interest in ascertaining the antecedents of children born out of wedlock in order to avoid intrafamilial marriage or to detect the existence of hereditary disorders.

The second factor, the nature and seriousness of the intrusion, is the same here as in *Kremin.* In that case the court characterized blood-testing as "a limited form of intrusion into one's bodily integrity or privacy." *Id.* at 855–56. Appellants attempt to distinguish *Kremin* and other cases on the basis of the identity of the person to be tested, but this has no bearing on the nature and seriousness of the intrusion.

The court must next determine whether the state's purposes justify the intrusion. As discussed above, the state's purposes here are important, while the intrusion is limited.

The final factor, whether the means adopted are proper and reasonable, also leads to the conclusion that the statute is constitutional. The means adopted are the same here as in *Kremin,* in which the court found them to be "proper, safe and reasonable." *Id.* at 856.

Because we hold that Minn.Stat. § 257.-62, subd. 1, is constitutional as applied, we need not determine whether appellants failed to provide the Attorney General with timely notice of their intent to challenge the statute's constitutionality.

## VI

■ Appellants next assert that respondents were collaterally estopped from seeking blood tests because the trial court had denied such requests on two prior occasions. However, the application of collateral estoppel is appropriate only when, among other things, "there was a final judgment *on the merits." Ellis v. Minneapolis Commission on Civil Rights,* 319 N.W.2d 702, 704 (1982) (emphasis added). Respondents' first request for blood tests was denied because appellants were not parties to the action. The second request was denied because appellants had not been provided with adequate notice. Neither denial was based on the merits, and therefore collateral estoppel does not apply.

## VII

■ Finally, appellants contend respondents waived their right to compel blood tests by failing to appeal from two orders issued pursuant to the parties' previous litigation. Assuming *arguendo* that this issue is properly before the court, appellants' argument must fail. The previous action was dismissed by this court due to lack of jurisdiction. A dismissal that is not based on the merits of a case "leaves matters precisely as though no proceeding had been commenced." *Lower v. Froelich,* 151 Minn. 552, 185 N.W. 940 (1921). Thus, respondents could not have waived their rights.

## DECISION

Affirmed.