**Diana Mandell VOSS, et al.,
Respondents,**

v.

**John DUERSCHERL, father of Terry Allan Duerscherl, deceased, et al.,
Petitioners, Appellants.**

No. CX–87–224.

Supreme Court of Minnesota.

July 15, 1988.

Seth M. Colton, Mary L. Knoblauch, St. Paul, for appellants.

Tom Foley, Ramsey Co. Atty., Brad A. Johnson, Asst. Co. Atty., St. Paul, for respondents.

KELLEY, Justice.

This appeal culminates efforts extending over six years by Diana Mandell Voss and Ramsey County, respondents, to attempt to establish that Terry Allan Duerscherl, deceased, was the father of a child born out of wedlock to Diana Mandell Voss on De-

cember 9, 1969.[1] In the present action, *Voss II*, John Duerscherl, father of Terry; J. Duerscherl, brother of Terry; and Gloria (Duerscherl) DeWolf, sister of Terry, were named party defendants. Simultaneously with the commencement of the present action, respondents moved that each of the appellant-defendants be compelled to submit to a blood test. The court of appeals affirmed the trial court's order compelling such submission. Because we conclude this paternity action did not survive the death of the putative father against these appellants, we reverse.

On December 9, 1969, a child referred to by the name of Christopher Allan Duerscherl was born out of wedlock to respondent Diana Mandell Voss. The first attempt to establish paternity was commenced against Terry Allan Duerscherl (Terry) in May 1982.[2] The court ordered Terry to submit to blood testing. However, Terry died before the blood testing was completed. Following his death, respondents' motion to substitute Kay Howard, personal representative of Terry's estate, as party defendant was granted, but a motion to have the present appellants submit to blood testing was denied because the present appellants were not then parties to the pending action. In July 1983, before a determination of paternity was made, Kay Howard was discharged as personal representative in the Estate of Terry Duerscherl by the district court, probate division.

After her discharge, in December 1983, respondents moved to substitute John Duerscherl as defendant and to require that he and the other present appellants

submit to blood testing. The trial court's order granting that motion was ultimately reversed by the court of appeals in *Voss I* because these appellants had not been made parties by proper service. *See Voss I*, 384 N.W.2d at 503.

Subsequently, the instant case was commenced by proper service of the summons and complaint on the appellants.[3] Concurrently with commencement of this action respondents moved for an order compelling each appellant to submit to blood testing. This appeal is from the affirmance of the order granting that motion.

Appellants here challenge the court's jurisdiction over them in the paternity action. They further assert that even if the court had proper jurisdiction over them, Minn. Stat. § 257.62, subd. 1 (1986) (the statute authorizing blood testing of "parents or brothers and sisters" in paternity actions maintained after a putative father's death), under the circumstances of this case, was erroneously retroactively applied, and that, as applied, the statute infringed upon their constitutional due process and privacy rights. In rejecting those assertions, the court of appeals held (1) that a paternity action survived Terry Allan Duerscherl's death; (2) that it survived against his father and siblings, the appellants here, and that they were proper parties to the action; and (3) that appellants' constitutional due process and privacy rights had not been violated. *Voss II*, 408 N.W.2d 161.

At the outset we note that unless this paternity action against these appellants survives Terry's death and the subsequent discharge of the personal representative of

1. The attempt was commenced in 1982 when Terry Duerscherl was still alive. Since then various phases of the matter have been heard by three court referees, and nine different Ramsey County judges. Twice the matter has been before the court of appeals. *See Voss v. Duerscherl*, 384 N.W.2d 499 (Minn.App.1986) (*Voss I*); *Voss v. Duerscherl*, 408 N.W.2d 161 (Minn. App.1987) (*Voss II*). For a truncated but overall descriptive history of the litigation, *see Voss II*, 408 N.W.2d at 162–163.

2. The prayer for relief in the first paternity action demanded "judgment be entered con-

cerning the child's name, custody, visitation, current support, the parents' proportion of the expenses of the mother's pregnancy and confinement, and the parents' proportion for the child's support incurred in the immediately preceding two years."

3. The prayer for relief in this action demands "that Terry Allan Duerscherl be determined to be the father of this child and that judgment be entered accordingly."

his estate, the other issues raised by appellants need not be addressed.

Relying on *Weber v. Anderson*, 269 N.W. 2d 892 (Minn.1978), the court of appeals concluded that this survival issue had already been decided. We disagree. The issue in *Weber* was much narrower than the one here raised. *Weber* involved an action to determine parentage for the purpose of inheritance under Minn.Stat. § 525.172 (1978). At the time *Weber* was decided, Minn.Stat. § 525.172 (1978) limited the right of a child born out of wedlock to inherit from the putative father only if paternity had been established. Likewise, Minn.Stat. §§ 257.251–257.33 (1978) (the paternity statute) failed to contain a provision for survival of paternity actions after the death of the putative father. Therefore, in *Weber* we looked to the last sentence of Minn.Stat. § 573.01 (1978)[4] to determine whether *for the purpose of inheritance from the decedent's estate* under section 525.172 the action survived. *Id.* at 896.[5] That limited holding precludes *Weber* from being dispositive on the issue of whether this action can be maintained by these respondents (the child's mother and Ramsey County) against these appellants (the father and siblings of the deceased putative father).

Furthermore, as acknowledged by the court of appeals "the legislature has not expressly authorized the maintenance of paternity suits against a deceased putative father's relatives." *Voss II*, 408 N.W.2d at 165. Nonetheless that is precisely what respondents have attempted by this action. Although respondent's assert that the objective of this paternity action is solely to establish eligibility for the recovery of certain governmental benefits, examination of the caption, the body, and the prayer for relief in the complaint clearly demonstrates the action has not been so limited.[6] The relief sought in the instant action demands that "Terry Allan Duerscherl be determined to be the father," or, in other words, a general determination of paternity carrying with it all consequences legally following such an adjudication. A general paternity determination, of the sort here sought, is rife with far reaching potential, and possibly yet unforeseen, legal consequences concerning, for example, rights of inheritance from or through collateral relatives;[7]

---

4. In 1978 Minn.Stat. § 573.01 insofar as applicable read:

   A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists * * *. All other causes of action by one against another, whether arising on contract or not, *survive to the personal representatives of the former and against those of the latter.* (Emphasis supplied).

5. The *Weber* action was commenced by the mother and natural guardian on behalf of the child in a representative capacity unlike the plaintiffs in the instant case.

6. Minn.Stat. § 257.62, subd. 1, authorizes the blood testing of a deceased putative father's immediate relatives ("parents or brothers and sisters") solely for determining a child's right to receive public assistance, such as social security and veterans' benefits, unless the person tested gives consent to the use of the blood tests for other purposes, for example inheritance.

7. The court's holding in the instant case has potential to affect childrens' inheritance rights in future cases. The law of inheritance by illegitimate children when *Weber* was decided provided that an illegitimate child could inherit from "the person who has been determined to be the father of such child in a paternity proceeding * * *; but such child shall not inherit from the kindred of the father by right of representation." Minn.Stat. § 525.172 (1978). That section was repealed by Act of May 29, 1985, ch. 250, § 27, 1985 Minn.Laws 851, 861. During the same session, the legislature amended the Uniform Probate Act to provide that a child born out of wedlock is the child of the father provided paternity is established "pursuant to sections 257.51 to 257.74 [the parentage act] before the death of the father or is established thereafter by clear and convincing proof, except that the paternity established under this clause is ineffective to qualify the father or his kindred to inherit from or through the child." Act of May 29, 1985, ch. 250, § 9, 1985 Minn.Laws 851, 853–54. The following year the act was further amended to delete the 1985 amendment, and to include in the definition of "child" all children "regardless of the marital status of the parents and the parent and child relationship may be established under the parentage act, sections 257.51 to 257.74." Act of April 2, 1986, ch. 3, art. 3, § 1, Sp.Minn.Laws 1357, *codified at* Minn.Stat. § 524.2–109 (1986). These various legislative changes have materially increased an

those that may ensue under statutes banning prohibited marriages (*see, e.g.,* Minn. Stat. § 517.03 (1986)); claims arising under public policy or laws prohibiting or governing human artificial insemination or surrogate parentage; and undoubtedly others of equal seriousness. No potential consequences of similar magnitude ensued from our holding in *Weber,* which was limited to ruling that a paternity action survived against a decedent's personal representative solely for the purpose of establishing inheritance rights against a decedent's estate. *Weber,* 269 N.W.2d at 896. Neither statutory nor case law of the state supports respondents' contention that this paternity action survives against a father or siblings of a deceased putative father. After consideration of possible sequelae flowing from an expansion of the scope of Minn.Stat. §§ 275.51 to 257.74 (1986), the legislature may deem it advisable or appropriate to authorize survival of general paternity actions in which parents and siblings of putative fathers are made parties. Until it has so concluded, we hold an action does not survive against them but only against a personal representative.

After the death of Terry Allan Duerscherl, Kay Howard, the personal representative of his estate, was properly substituted as a party defendant, and, under *Weber* this action would have survived

against her. However, before an adjudication was made, she was finally discharged as personal representative on July 18, 1983.[8] Therefore, absent exceptional circumstances not ascertainable from the record, Kay Howard's discharge as personal representative would terminate the estate's liability. *See, e.g.,* Minn.Stat. § 524.3–1005 (1982); Minn.Stat. § 524.1–106 (1982).[9]

Accordingly, we hold that this paternity action did not survive against the father and siblings of the deceased putative father and that they are not proper parties to the paternity action. We reverse and remand for dismissal of the action.[10]

---

illegitimate's right of inheritance under the Uniform Probate Act.

8. The record fails to disclose whether respondents contested Kay Howard's discharge, or, if they did not, why they did not. Likewise we have been furnished no evidence that appeal was taken from the discharge order. Moreover, the record is silent as to the events and the procedure leading up to, and resulting in, the discharge of the personal representative at a time when it appears an action was pending against her. *See* Minn.Stat. § 524.3–1003(b) (1986) (a personal representative may be discharged if "no proceedings involving the personal representative are pending in the court.") Therefore, we do not address that issue.

9. Throughout these prolonged proceedings the child, Christopher Allan Duerscherl, has neither personally nor by representative been a party. In neither *Voss I* nor *Voss II* did either Diana

Voss or Ramsey County purport to, nor did represent the child in a representative capacity. This appeal does not raise the issue of whether the child would be barred from maintaining a paternity action. Accordingly, we do not rule on the issue, but do note that the statute of limitations has not yet run, at least as to part of the relief herein sought by his mother. Minn. Stat. § 257.58 (1986). Nor do we decide, in case such an action is maintainable, whether parents and siblings may be required as witnesses to submit to blood testing.

10. Our disposition makes a discussion of other issues raised by appellant unnecessary. Those issues involve (a) the retroactive application of Minn.Stat. § 257.62, subd. 1 (1986) to this case, (b) the constitutional challenge claiming invasion of privacy and due process, (c) estoppel and (d) waiver.