# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1786

_____

Diana Delgado

*Plaintiff - Appellant*

v.

Midland Credit Management, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 18, 2024
Filed: March 21, 2025

_____

Before SMITH, GRUENDER, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

We must decide whether a Minnesota state-court default judgment can bind the parties in a later federal lawsuit. Like the district court,[1] we conclude it can.

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

I.

Diana Delgado owed money on a department store credit card. Midland Credit Management, Inc., bought the debt and then sued in Minnesota state court to collect it. Delgado failed to respond to the summons or participate in any way, so the court administrator entered a default judgment at Midland's request. *See* Minn. Stat. § 485.01 (explaining that the "clerk of the district court" is "known as the court administrator"). Getting it required Midland to show how it acquired the debt. *See id.* § 548.101(a)(5) (requiring "evidence establishing a valid and complete chain of assignment of the debt from the original creditor to the party requesting judgment" in a consumer-debt-collection action).

Rather than seeking reconsideration or appealing the default judgment, Delgado filed her own lawsuit against Midland in federal court, which alleged several violations of the Fair Debt Collection Practices Act. *See* 15 U.S.C. §§ 1692e–f. One was that it had tried to collect the debt without owning it.

The district court disagreed and dismissed her case. *See* Fed. R. Civ. P. 12(c). As relevant here, it concluded that the question of who owned the debt had already been answered in the state-court action, so it gave the default judgment issue-preclusive effect. On appeal, our task is to determine whether an issue decided by a default judgment can be "conclusive in a subsequent action between the parties." *Twin City Pipe Trades Serv. Ass'n v. Wenner Quality Servs., Inc.*, 869 F.3d 672, 676 (8th Cir. 2017) (quoting *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015)).

II.

We review this legal question de novo and "give preclusive effect to [a] state-court judgment[] whenever the courts of the [s]tate from which [it] emerged would do so." *Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). In other words, when deciding whether

-2-

collateral estoppel applies, we are "bound by the decisions of the Minnesota Supreme Court." *Great W. Cas. Co. v. Decker*, 957 F.3d 910, 913 (8th Cir. 2020) (citation omitted).

## A.

One answers the question. In *Herreid v. Deaver*, the Minnesota Supreme Court held that a default judgment "stands as . . . a final determination of the facts essential to its existence" and is "conclusive upon the parties" in later cases, even if the defendant "took no part" in the proceedings. 259 N.W. 189, 190–91 (Minn. 1935). The Minnesota Court of Appeals has since relied on *Herreid* to "apply[] collateral estoppel to those claims determined [by a] previous default judgment." *Roberts v. Flanagan*, 410 N.W.2d 884, 886–87 (Minn. Ct. App. 1987).

Here, both of *Herreid*'s boxes have been checked. First, Midland's ownership of the debt was "essential to" the default judgment's "existence," *Herreid*, 259 N.W. at 191, because the court administrator could not have entered it without "evidence establishing a . . . chain of assignment" back to the original creditor, Minn. Stat. § 548.101(a)(5). Second, *Herreid* and *Roberts* tell us that her lack of participation in the prior case makes no difference. The final judgment is "conclusive" regardless. *Herreid*, 259 N.W. at 191; *accord Roberts*, 410 N.W.2d at 886–87.

As old as *Herreid* is, we are still "bound by" it, *Decker*, 957 F.3d at 913 (citation omitted), unless a more recent case has "overruled or narrowed" its holding, *Badrawi v. Wells Fargo Home Mortg., Inc.*, 718 F.3d 756, 759 (8th Cir. 2013). The Minnesota Supreme Court is "extremely reluctant to overrule [its] precedent under principles of *stare decisis*," *State v. Martin*, 773 N.W.2d 89, 98 (Minn. 2009) (citation omitted), so it would take something "persuasive" to "convince[]" us it has done so here, *Harleysville Ins. Co. v. Physical Dist. Servs., Inc.*, 716 F.3d 451, 457 (8th Cir. 2013) (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)).

B.

Delgado thinks she has just the case: *Hauschildt v. Beckingham*, 686 N.W.2d 829 (Minn. 2004). It applies the modern approach to collateral estoppel, which requires: "(1) the issue [to] be identical to one in [the] prior adjudication; (2) . . . a final judgment on the merits; (3) [the same] part[ies] . . . [from] the prior adjudication; and (4) . . . a full and fair opportunity to be heard on the adjudicated issue." *Id.* at 837 (citation omitted). Delgado concedes only that she was a party to the default judgment, nothing else. In her view, the four-part test from *Hauschildt*, along with the additional consideration of avoiding "injustice" in default-judgment situations, *id.*, means *Herreid* and *Roberts* are no longer good law. Although it is true that collateral estoppel has come a long way since *Herreid*, *Hauschildt* did not erase everything that came before it. In fact, if anything, it provides a user's guide to *Herreid*.

1.

Consider the identical-issue requirement. According to *Hauschildt*, the issue in the prior case must have been "necessary and essential." *Id.* Here, Midland's ownership of the debt was both, because the court administrator could not have entered a default judgment otherwise. *See* Minn. Stat. § 548.101(a)(5) (requiring "evidence establishing a . . . chain of assignment of the debt").

Even if the court administrator just rubber-stamped the motion, as Delgado suggests, it would make no difference. Collateral estoppel applies regardless of whether the prior decision was correct. *See State v. Joseph*, 636 N.W.2d 322, 329 n.4 (Minn. 2001) (noting that, in the preclusion context, "it is immaterial whether" the prior, "unappealed" judgment "was right or wrong"). Besides, Delgado had options for challenging it: either moving to "vacate[]" the "default judgment" for "cause," Minn. Gen. R. Prac. 520(b), or appealing it. Not an option, however, is collaterally attacking it in federal court.

-4-

The issue must have also been "distinctly contested and directly determined." *Hauschildt*, 686 N.W.2d at 837–38. Delgado thinks this language required her personal participation, but *Hauschildt* suggests otherwise. For an issue to be directly contested, the question must have been resolved in the prior case, not just one that the court *could have* decided but did not. *See id.* Here, ownership of the debt was "distinctly contested and directly determined," *id.*, because a Minnesota statute required it to be, *see* Minn. Stat. § 548.101(a)(5). Minnesota collateral-estoppel law, especially given *Herreid* and *Roberts*, required nothing more. *See Herreid*, 259 N.W. at 190–91; *Roberts*, 410 N.W.2d at 886–87.

2.

Unless, of course, Delgado was never given "a full and fair opportunity to be heard" in state court. *Hauschildt*, 686 N.W.2d at 837 (citation omitted). The factors to consider are "whether there were significant procedural limitations in the prior proceeding, whether [Delgado] had the incentive to litigate fully the issue, [and] whether effective litigation was limited by the nature or relationship of the parties." *Joseph*, 636 N.W.2d at 328 (quoting *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990)).

Nothing suggests that Delgado had inadequate notice of the prior proceeding or that anything kept her from mounting a full defense to Midland's claim of ownership. And given that Midland was trying to collect on the same credit-card debt that she is suing over today, she had every incentive and opportunity to contest it before. In these circumstances, she is "bound by" her decision to "sit silent" rather than "present evidence" in state court. *Id.* at 329 (citation omitted).

3.

The only remaining collateral-estoppel requirement is whether a default judgment qualifies as a "final judgment on the merits." *Hauschildt*, 686 N.W.2d at 837 (citation omitted). There is hardly any Minnesota law on the subject, but a few

cases provide bookends. Purely procedural dispositions for failure to join an indispensable party or provide adequate notice are not merits determinations. *See Voss v. Duerscherl*, 408 N.W.2d 161, 167 (Minn. Ct. App. 1987), *rev'd on other grounds*, 425 N.W.2d 828 (Minn. 1988). Dismissals for failure to state a claim or on summary judgment, by contrast, are. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 748 (Minn. 2000) (failure to state a claim); *Dixon v. Depositors Ins. Co.*, 619 N.W.2d 752, 755 (Minn. Ct. App. 2000) (summary judgment); *see also Black's Law Dictionary* 1007 (12th ed. 2024) (defining "judgment on the merits" as "[a] judgment based on the evidence rather than on technical or procedural grounds").

Default judgments lie somewhere in between. Fortunately, this case does not require us to test the limits because of the Minnesota statute requiring proof "establishing [the] . . . chain of assignment." Minn. Stat. § 548.101(a)(5). Submitting evidence may be a procedural requirement, but evaluating what it "establish[es]," as the statute requires, *id.*, is a merits determination comparable to what happens at summary judgment. It was, in *Herreid*'s words, a substantive issue that was "essential to" the default judgment's "existence." 259 N.W. at 191. There is no relitigating it now.

4.

Delgado's final argument is that applying collateral estoppel here would just flat-out "work an injustice." *Hauschildt*, 686 N.W.2d at 837. Minnesota courts have sometimes declined to "rigidly appl[y]" issue and claim preclusion when it does, even when the four-part test has been met. *Id.* They have done so when necessary to "protect[] the judicial process from fraud upon the court," *Halloran v. Blue & White Liberty Cab Co.*, 92 N.W.2d 794, 798 (Minn. 1958), or there is doubt about the identity of the party bound by the prior judgment, *see Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 614 (Minn. 1988). In both situations, the rationale has been leaving open "grounds and defenses not previously litigated" and

preserving "unexplored paths that may lead to truth." *Hauschildt*, 686 N.W.2d at 837 (quoting *Brown v. Felsen*, 442 U.S. 127, 132 (1979)).

Neither concern is present here. Delgado, even as a pro se litigant, knew exactly what she needed to do in the state-court action. The summons she received informed her that, if she "d[id] not [a]nswer within 21 days," she would "lose th[e] case," she would "not get to tell [her] side of the story," and "the [c]ourt may decide against [her] and award [Midland] everything asked for in the [c]omplaint." From there, she could have raised and preserved any "grounds and defenses" she had before the court administrator entered a default judgment. *Id.* (quoting *Brown*, 442 U.S. at 132). Pro se litigants must follow the rules like everyone else, *see Davis v. Danielson*, 558 N.W.2d 286, 287 (Minn. Ct. App. 1997), so she must "live with" her "choice" not to respond, *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013).

## III.

We accordingly affirm the judgment of the district court.

_____